**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

MARQUEL ALI,

        Plaintiff,

v.                             CIVIL ACTION NO.  5:17-cv-03386

RALEIGH COUNTY, et al.

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant Raleigh County, Raleigh County Sheriff's Department, and Steven Tanner's Motion to Dismiss the Plaintiff's Complaint* (Document 7) and *Memorandum of Law in Support* (Document 8), the *Plaintiff's Response in Opposition* (Document 19), and *Defendants Raleigh County, Raleigh County Sheriff's Office, and Steven Tanner's Reply to the Plaintiff's Response* (Document 28). The Court has also reviewed the Plaintiff's *Complaint* (Document 1), *Amended Complaint* (Document 23), and all attached exhibits. For the reasons stated herein, the Court finds that the motions should be granted in part and denied in part.

**FACTUAL ALLEGATIONS**

The Plaintiff, Marquel Ali, initiated this action with a complaint filed in this Court on June 23, 2017. The Plaintiff originally named the following entities as Defendants: Raleigh County, a municipal corporation organized under the laws of the State of West Virginia, Raleigh County Sheriff's Department (Sheriff's Department), a law enforcement agency established, maintained, and controlled by Raleigh County, the City of Beckley, a municipal corporation organized under the laws of the State of West Virginia, Beckley Police Department (BPD), a law enforcement

agency established, maintained, and controlled by the City of Beckley, and the West Virginia State Police (WVSP), a state law enforcement agency organized under the laws of the State of West Virginia. Mr. Ali also named several individuals as Defendants, in both their individual and official capacities: Mr. Steven Tanner, a resident of Raleigh County, West Virginia, and the Sheriff of Raleigh County during the applicable time frame, Mr. Gary Epling, a resident of Raleigh County, West Virginia, and a detective with the Raleigh County Sheriff's Department, Mr. Kenneth Pack, a resident of Raleigh County, West Virginia, and an officer with the WVSP, Mr. David Snuffer, a resident of Raleigh County, West Virginia, and an officer with the BPD, and Mr. Jason Redden, a citizen of Raleigh County, West Virginia, and, during the applicable time, a parole officer with the West Virginia Department of Corrections.[1]  (Amended Compl. at ¶¶ 2-13.)[2]  The Plaintiff alleges that "all acts of the Defendants were done . . . under the color and pretense of [the law] of the State of West Virginia and under the authority of the office" by which they were employed.  (*Id.* at ¶ 14.)

Mr. Ali, "an African American male with a dark complexion," was hired by the Defendant Raleigh County Sheriff's Department as a deputy and began his employment on March 18, 2014. (*Id.* at ¶ 1, 17.)  The Sheriff's Department requires all new hires to complete a probationary year during which they receive on-the-job training and attend the West Virginia State Police Academy.

---

1 Subsequent to the time period in which most of the Plaintiff's allegations took place, Mr. Redden became a deputy with the Defendant Raleigh County Sheriff's Department.  The Plaintiff does not specifically allege when Mr. Redden became a deputy sheriff.

2 On June 7, 2017, Mr. Ali filed a *Motion for Leave to File Amended Complaint* (Document 4).  While that motion was pending, the parties proceeded to brief the pending motions to dismiss.  While those motions were being fully briefed, this Court issued its *Order* (Document 22) granting the motion and ordering the Plaintiff's amended complaint to be filed.  After the granting of this motion, the Defendants proceeded to fully brief their motions to dismiss the original complaint.  Because arguments presented by the parties in the motions to dismiss were not substantively altered by the filing of the amended complaint, the Court applies those arguments to the Plaintiff's amended complaint.

According to the Plaintiff, four other new deputies were hired at the same time as him, and one of them was also an African American. The other African American had a "very light complexion," as alleged by Mr. Ali. (*Id.* at ¶ 19.) Mr. Ali alleges that he was, in fact, "the only African American officer employed with the Defendant Sheriff's Department who had a dark complexion." (*Id.* at ¶ 21.)

Mr. Ali alleges that, throughout his employment with the Defendant Sheriff's Department, he was frequently subjected to racial slurs and other inappropriate treatment. Defendant Tanner would often call him "boy" or refer to him as a "thug," other white officers would place bets on whether he would make it through his training at the police academy, and he would often receive write-ups while white officers "who engaged in the same activity were not issued any form of reprimand or other discipline." (*Id.* at ¶ 23-28.) On March 16, 2015, Mr. Ali was subjected to an interrogation regarding allegations by someone he had arrested. A white officer was present with Mr. Ali when he made the arrest, but was not subjected to the same interrogation and investigation. On the following day, "one day prior to the end of his one year probationary period," Mr. Ali was terminated from his employment by Defendant Tanner. (*Id.* at ¶ 38.) Mr. Ali appealed his termination to the Raleigh County Civil Service Commission, and attended a hearing on June 2, 2015. The parties were required to submit proposed findings of fact and conclusions of law to the Commission by June 22, 2015.

On June 23, 2015, one day after the submission of those findings of fact, the Plaintiff's cousin contacted him and asked for a ride. The Plaintiff's cousin was on parole at the time and owned no vehicle, so the Plaintiff agreed to pick him up. Prior to picking up his cousin, Mr. Ali received a phone call from a State Trooper regarding a case he had worked on while a deputy.

The trooper asked the Plaintiff if he was currently in Beckley. Mr. Ali stated that he was in Beckley, and proceeded to pick up his cousin some twenty minutes later. While in route to do so, "[a]pproximately one-half mile from the residence . . . Plaintiff noticed several unmarked police cars parked in a car wash parking lot." (*Id.* at ¶ 53.) Mr. Ali proceeded to his cousin's house where, after waiting several minutes, his cousin placed a bag in the trunk and got in the car. The two decided to go to Burger King, and when exiting the drive through with their food, the Plaintiff's car was "barricaded in by several unmarked police cars, including the cars Mr. Ali had seen near the residence when he picked up his cousin." (*Id.* at ¶ 61.) "The officers who were involved in the traffic stop knew Mr. Ali and the vehicle he drove," and also "knew that [Mr. Ali] owned a personal firearm . . . ." (*Id.* at ¶ 62.)

One of the officers approached Mr. Ali at gunpoint and asked him if he had a firearm. Although Mr. Ali responded that he did not have a firearm in the car, he was forced to the ground and handcuffed. After the Defendant officers had begun searching his car, Mr. Ali was asked to sign a consent form, and signed it, although it "had been previously completed by Defendants and/or agents of Defendants and was also incorrectly dated '6-22-2015.'" (*Id.* at ¶ 70.) After signing the form, the Plaintiff saw Defendant Epling "approach the back of the car carrying a mid-to-large sized brown or manila color envelope/package." (*Id.* at ¶ 73.) Upon completing the search of the vehicle, the Defendants allegedly found illegal drugs in the trunk and a small amount of marijuana on the Plaintiff's cousin. Both the Plaintiff and his cousin were arrested. The Plaintiff was charged with two counts of possession of a controlled substance with intent to deliver and conspiracy to commit a felony. "After Mr. Ali was arrested, the State Trooper who had called [him] less than an hour earlier to confirm [he] was in Beckley, arrived at the scene and transported

Mr. Ali to the Beckley State Police office, then to jail." (*Id.* at ¶ 80.) According to Mr. Ali, the Defendants conspired together to wrongfully and maliciously arrest and prosecute him in retaliation for his intent to bring a discrimination lawsuit against Defendant Raleigh County Sheriff's Department and Defendant Tanner.

The Defendants interrogated Mr. Ali and his cousin and conducted a criminal investigation of the charges, during which time the Defendants proactively "took steps to hide [] exculpatory evidence from Mr. Ali for nearly two years." (*Id.* at ¶ 100.) "Over the nearly two years following Mr. Ali's arrest, Defendants failed and/or refused to disclose or produce material evidence related to Mr. Ali's case despite repeated requests by Mr. Ali's counsel." (*Id.* at ¶ 103.) The Defendants also made various false claims regarding why they pulled the Plaintiff over in the Burger King parking lot. On February 13, 2017, Mr. Ali's first criminal trial began in the Circuit Court of Raleigh County, West Virginia. On February 15, after being informed that certain individuals in court had been seen speaking with potential defense witnesses in the hallway, the court declared a mistrial *sua sponte*. On May 22, 2017, a second criminal trial began on the same charges. On May 26, 2017, after a four-day trial, the jury returned a defense verdict, finding Mr. Ali not guilty on all charges. Not quite three months later, Mr. Ali filed this action.

Mr. Ali's amended complaint sets forth eleven counts: Count I - Race Discrimination, Count II - Color Discrimination,[3] Count III - Discrimination and Interference with Plaintiff's Right to Equal Benefit of the Law in Violation of 42 U.S.C. § 1981, Count IV - Warrantless Arrest Pursuant to False Tip in Violation of 42 U.S.C. § 1983, Count V - Conspiracy to Interfere with Constitutional Rights in Violation of 42 U.S.C. § 1985(3), Count VI - Neglect to Prevent

---

3 The Plaintiff asserts the first two causes of action only against the Raleigh County Sheriff's Department and Defendant Tanner.

Conspiracy to Interfere with Plaintiff's Rights, Count VII - False/Wrongful Arrest and Improper Investigation and Prosecution in Violation of 42 U.S.C. § 1983, Count VIII - Abuse of Process, Count IX - Malicious Prosecution, Count X - Negligent Infliction of Emotional Distress, and Count XI - Outrage.

**STANDARD OF REVIEW**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id*. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice…

[because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

The Raleigh County Defendants move for dismissal of the Plaintiff's amended complaint on several different grounds.

### A. *Raleigh County Sheriff's Office is not Capable of Being Sued*

These Defendants argue that the Plaintiff's complaint should be dismissed in its entirety as to the Raleigh County Sheriff's Department because the sheriff's department is not an entity that is capable of being sued. The Defendants state that "there is no organic authority in state law that creates a sheriff's department or sheriff's office," thus rendering the sheriff's office incapable of facing suit. The Plaintiff counters that previous case law from this Court is incorrect, and that a

sheriff's departments in the state of West Virginia is capable of being sued. The Plaintiff contends that West Virginia Code § 29-12A-3(c), part of the West Virginia Governmental Tort Claims and Insurance Reform Act, does not provide sheriff's departments with state immunity from lawsuits. The Plaintiff further argues that the West Virginia Supreme Court of Appeals "has not questioned" whether a sheriff's office is capable of facing suit.

The Court finds that the Raleigh County Sheriff's Department is not an entity capable of being sued. As this Court has previously found on multiple occasions,

> [w]hile West Virginia law provides for the election of sheriffs and the appointment of sheriff's deputies, there is no organic authority in state law that creates a sheriff's department or sheriff's office. This stands in contrast to entities such as volunteer fire departments and emergency service organizations, the existence of which is provided for by state law and both of which qualify as political subdivisions under Section 29-12A-3(c) [of the West Virginia Code].

*Webb v. Raleigh Cty. Sheriff's Dep't*, No. 5:09-CV-01253, 2010 WL 3702648, at *7 (S.D.W. Va. Sept. 16, 2010); *Tomashek v. Raleigh Cty. Emergency Operating Ctr.*, No. 2:17-CV-01904, 2018 WL 522420, at *2-3 (S.D.W. Va. Jan. 23, 2018) (Goodwin, J.); *see also*, *Kowalyk v. Hancock Cty.*, No. CIV.A. 5:08CV181, 2009 WL 981848, at *2 (N.D.W. Va. Apr. 9, 2009). Accordingly, the Defendants' motion to dismiss should be granted and all of the counts filed specifically against the Raleigh County Sheriff's Department should be dismissed.

### B. Title VII Claims Against Defendant Steven Tanner

Defendant Tanner argues that the Plaintiff's Title VII claims in Counts I and II against him in his individual capacity should be dismissed. Defendant Tanner argues that the Plaintiff cannot pursue Title VII claims against him because he was the Plaintiff's supervisor, not employer, and as a supervisor was not liable in his individual capacity for Title VII violations. The Plaintiff

counters that his Title VII claims are viable. He argues that courts outside the Fourth Circuit have held that supervisors can be liable under Title VII in their individual capacities, and seeks to have this Court adopt that view.

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any of its employees "with respect to his . . . terms, conditions, or privileges of employment" because of that individuals race or color, among other things. 42 U.S.C. § 2000e-2(a). In considering who is deemed to be an "employer," the Fourth Circuit has held that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). This conclusion has been reached by a majority of other circuit courts that have considered the issue. *See*, *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3rd Cir. 1996); *Grant v. Lone Star Co.*, 21 F.3d 649, 653 (5th Cir. 1994); *Williams v. Banning*, 72 F.3d 552, 554 (7th Cir. 1995); *Smith v. St. Bernards Regional Medical Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996). Further, this Court has recently applied the Fourth Circuit's holding, continuing to find that supervisors are not liable in their individual capacities for alleged Title VII violations. See, *Lieving v. Pleasant Valley Hosp., Inc.*, No. CIV.A. 3:13-27455, 2014 WL 1513851, at *5 (S.D.W. Va. Apr. 11, 2014) (Chambers, J.); *Hallman-Warner v. Bluefield State Coll.*, No. 1:17-CV-02882, 2018 WL 1309748, at *6 (S.D.W. Va. Jan. 19, 2018), *report and recommendation adopted,* No. CV 1:17-02882, 2018 WL 1309726 (S.D.W. Va. Mar. 13, 2018).

The Plaintiff does not argue that Defendant Tanner was his employer, rather than his supervisor, pursuant to Title VII. Thus, the Court finds that the Plaintiff's Title VII claims against Defendant Tanner in his individual capacity, pled in Counts I and II, should be dismissed.

*C. Dismissal Based on the "Same Actor Inference"*

The Defendants assert that Mr. Ali's claims must be dismissed based on the "same actor inference," arguing that because Defendant Tanner both hired and fired him, a strong inference results against discrimination. However, the Court has previously found that the Raleigh County Sheriff's Department is not an entity capable of being sued, and that the Title VII claims against Defendant Tanner in his individual capacity are not legally viable. Thus, the Court need not address the Defendants' arguments for dismissal regarding the "same actor inference" in relation to Mr. Ali's Title VII claims.

*D. Immunity Under the West Virginia Tort Claims and Insurance Reform Act*

The Defendants Raleigh County, Steven Tanner, and Raleigh County Sheriff's Department also assert that the Plaintiff's tort claims should be dismissed because they are immune from suit for torts stemming from intentional acts. The Defendants argue that the claims in Counts IV, V, VI, VII, VIII, IX, X, and XI all arise out of the intentional acts of individuals and thus cannot continue against Defendant Raleigh County or Defendant Tanner in his capacity as then Sheriff of Raleigh County. The Plaintiff counters that he has sufficiently pled that Defendant Tanner has personal liability for the intentional torts alleged in the amended complaint, and further argues that he has sufficiently alleged intentional misrepresentations on the part of Raleigh County and the sheriff's department such that their immunity has been lost.

West Virginia Code § 29-12A-4 states that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." However, political subdivisions are not liable for "intentional malfeasance on the part of their employees." *Poe v. Town of Gilbert,*

10

*W. Va.*, No. 2:11-CV-00645, 2012 WL 3853200, at *8 (S.D.W. Va. Sept. 5, 2012) (Johnston, J.) (citing *Mallamo v. Town of Rivesville*, 197 W. Va. 616 (1996)); *Polk v. Town of Sophia*, No. 5:13-CV-14224, 2013 WL 6195727, at *7 (S.D.W. Va. Nov. 27, 2013).

The Plaintiff's claims in Counts VIII, IX, X, and XI are tort law claims brought by the Plaintiff based on allegations of intentional acts by the Defendant law enforcement officers. Count VIII alleges abuse of process, Count IX alleges malicious prosecution, Count X alleges negligent infliction of emotional distress, and Count XI alleges outrage. Thus, inasmuch as Raleigh County is a political subdivision, it cannot be sued for the intentional acts of the Defendant officers. The Defendants' motion should be granted as to Counts VIII, IX, X, and XI, and those counts should be dismissed as to Defendant Raleigh County. However, because the Plaintiff alleges that Defendant Tanner also took part in intentional misconduct and has personal liability for intentional torts, the motion to dismiss these claims against him should be denied. Further, Counts IV, V, VI, and VII are not brought under state law tort theories, but are federal law claims pursuant to 42 U.S.C. Sections 1981, 1983, and 1985, and will be discussed herein.

### E. 42 U.S.C. § 1983 Claims Against Raleigh County

The Defendants seek dismissal of the Plaintiff's Section 1983 claims against Raleigh County, Steven Tanner, and the Raleigh County Sheriff's Department. The Defendants argue that a local government may only be sued under a Section 1983 claim when the plaintiff alleges that the execution of a government custom or policy causes the alleged injury. The Defendants contend that the Plaintiff has failed to allege that a Raleigh County custom or policy motivated or caused the allegations in the amended complaint, and all the Section 1983 claims against Raleigh County should be dismissed.

11

The Plaintiff counters that a single instance of a constitutional violation supports a Section 1983 claim, and that he has sufficiently alleged a governmental policy that led to his injuries. He argues that his complaint clearly provides allegations of acts by Defendant Tanner that, although they only occurred once, constitute sufficient conduct to satisfy a single decision by a municipal policymaker such that Raleigh County as a governmental entity should be held liable.

42 U.S.C. § 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A local government cannot be sued under 42 U.S.C. § 1983 for injuries caused by its employees or agents unless it is the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" that causes the injury. *Monell*, 436 U.S. at 694.

Further, "[i]n a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. *See also Iqbal*, 556 U.S. at 693, (Souter, J., dissenting) (stating that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely.")

The Court finds the Plaintiff has failed to sufficiently plead a policy or custom such that Raleigh County can be held liable for the Plaintiff's Section 1983 claims. The Plaintiff alleges

that the individual Defendant law enforcement officers conspired together to violate his constitutional rights on one occasion. The Plaintiff has not alleged any policy or custom of violating other citizen's rights, nor has the Plaintiff alleged that Defendants Raleigh County or Raleigh County Sheriff's Department failed to adequately train its officers. An allegation of one incident of unconstitutional activity is not sufficient to impose local governmental liability. The Plaintiff's claims brought pursuant to Section 1983 against Defendant Raleigh County[4] in Count IV should be dismissed.

### F. Punitive Damages

The Raleigh County Defendants also argue that the claims against them for punitive damages should be dismissed because West Virginia Code Section 29-12A-17 prohibits an award of punitive damages against a municipality or political subdivision. The Plaintiff concedes that West Virginia law does, in fact, prohibit an award of punitive damages to a municipality or political subdivision. The Defendants' motion to dismiss the claims for punitive damages against Raleigh County should be granted.

### G. Defendant Tanner's Liability Under W.Va. Code § 7-14A-4

The Defendants argue that the claims against Defendant Tanner as Sheriff of Raleigh County should be dismissed because he cannot be held liable for the alleged conduct of his deputies pursuant to West Virginia Code § 7-14A-4. Given this statute, the Defendants argue that Defendant Tanner cannot be held liable for the claims brought pursuant to of Section 1983 and other state law tort violations committed by his deputies.

---

4 The Court notes that the Raleigh County Defendants also argue in their motion that the Section 1983 claims should be dismissed based on the Will Doctrine, and argue that Raleigh County is not a "person" for the purposes of Section 1983. Because the Court finds here that the Section 1983 claims against Raleigh County should be dismissed, the Court does not address that argument.

The Plaintiff counters that West Virginia state law and this Court's prior precedent hold otherwise. According to Mr. Ali, Defendant Tanner's arguments disregard this Court's holding in *Webb v. Raleigh County Sheriff's Department*, No. 5:09-CV-01253, 2010 WL 3702648 (S.D.W. Va. Sept. 16, 2010). The Plaintiff argues that, in *Webb*, this Court held that West Virginia Code § 7-14A-4 conflicted with West Virginia Code § 29-12A-4, part of the West Virginia Governmental Tort Claims and Insurance Reform Act (WVGTCIRA). Based on this conflict, the Plaintiff contends that the ruling in *Webb* should also extend to the Sheriff himself, and the claims against Defendant Tanner should not be dismissed.

The office of sheriff is a constitutional office filled by popular vote. Pursuant to West Virginia law, deputy sheriffs are defined as, among other things, "[p]ersons appointed by a sheriff as his deputies whose primary duties as such deputies are within the scope of active, general law enforcement and as such are authorized to carry deadly weapons, patrol the highways, perform police functions, make arrests or safeguard prisoners." W.Va. Code § 7-14-2. West Virginia law further limits the liability of sheriffs regarding the actions of their deputies by stating that "no sheriff shall be held jointly or severally liable on his official bond or otherwise for any act or conduct of any deputies . . . except in cases where such deputy is acting in the presence of and under the direct, immediate, and personal supervision of such sheriff." W.Va. Code § 7-14A-4.

In *Webb*, this Court examined the interplay between that statute and a more recently enacted conflicting statute, the WVGTCIRA. *Webb*, 2010 WL 3702648 at *7-8. This Court found that "[a]s the most recent of the two conflicting statutes, Section 29-12A-4(c)(2) takes precedence over Section 7-14A-4." *Id.* at 7. The newer statute, Section 29-12A-4(c)(2), states that "political subdivisions are liable for injury, death, or loss to persons or property caused by the

negligent performance of acts by their employees while acting within the scope of employment." Because that more recent statute takes precedence, and because it allows for political subdivisions such as county commissions to be held liable for the negligence of their employees in certain circumstances, this Court held that a lawsuit against the Raleigh County Commission for the acts of deputies could continue.  *Id.* at 8.   The Court further found that, pursuant to W.Va. Code § 29-12A-5, suits against individual officer employees of a political subdivision could go forward where the plaintiff has alleged facts that show that the actions of the officer employees were manifestly outside the scope of their official duties or were made with a malicious purpose, in bad faith, or in a wanton or reckless manner.  *Id.*

Similarly, Mr. Ali has alleged facts that, when taken as true, provide that the Defendant officers' actions were made with a malicious purpose.   The Plaintiff alleges that Defendants Tanner, Epling, Snuffer, Pack, and Redden conspired together to maliciously arrest him without probable cause and prosecute him in a retaliatory manner based on the Plaintiff's challenge to his termination and his plan to file suit based on racial discrimination.   Defendant Tanner's motion regarding his liability under West Virginia Code § 7-14A-4 should be denied.

### H.  *Defendant Tanner in his Official Capacity*

The Defendants seek dismissal of the claims against Defendant Tanner in his official capacity.   The Defendants argue that claims against Defendant Tanner in his official capacity as Sheriff of Raleigh County cannot proceed because they are merely suits against the entity.   The Plaintiff concedes the same in his response and argues that, although the claims may continue against Defendant Tanner in his individual capacity, the claims against him in his official capacity should be dismissed pursuant to *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).   The Court

15

finds that the claims against Defendant Tanner in his official capacity as Sheriff of Raleigh County should be dismissed.

## I. *Exhaustion of Federal and State Remedies Regarding Title VII Claims*

The Raleigh County Defendants also seek to dismiss the Plaintiff's claims alleged in Counts I and II under Title VII of the Civil Rights Act for race and color discrimination. The Defendants argue that the Plaintiff did not timely file these claims because he did not sufficiently show that he exhausted his administrative remedies with the United States Equal Employment Opportunity Commission (EEOC). The Defendant also alleges that the Plaintiff failed to exhaust his state administrative remedies by failing to appeal the results of his civil service hearing to the Raleigh County Circuit Court.

The Plaintiff counters that he did, in fact, exhaust his EEOC remedies, and filed an exhibit stating as much. The Plaintiff further argues that he was not required under state law to pursue an appeal of his grievance proceeding before filing his Title VII discrimination claims because nothing in Title VII requires exhaustion of state remedies before filing such a suit.

The Court finds that it need not address these arguments, however. The Plaintiff brought his Title VII claims against the Raleigh County Sheriff's Department and Defendant Steven Tanner only. As the Court has previously held above, the Raleigh County Sheriff's Department is not an entity capable of being sued, and all of the claims against it should be dismissed. Further, the Court has previously found that the Title VII claims against Defendant Steven Tanner should be dismissed because, as a supervisor, as opposed to an employer, he is not liable under Title VII. The Title VII claims must be dismissed because the Plaintiff has not named an entity that is subject to suit with respect to those claims.

The Raleigh County Defendants seek dismissal of the Plaintiff's claims in Count III brought pursuant to 42 U.S.C. § 1981.   The Defendants argue that the Plaintiff's claim for discrimination and interference with his rights to equal benefits under the law should have been brought pursuant to 42 U.S.C. § 1983 as opposed to 42 U.S.C. § 1981.   The Defendants base their argument on the United States Supreme Court holding, in *Jett v. Dallas Independent School District,* that Section 1983 is the exclusive remedy for a claim against a state actor accused of violating rights secured under Section 1981.   The Plaintiff disagrees.   He argues that the holding in Jett is inappropriate given the 1991 amendments to the Civil Rights Act, and asks this Court to disregard both the holding in Jett and the Fourth Circuit's affirmation of it to find that the Plaintiff can plead a claim for discrimination under Section 1981 against state actors in their individual capacities.

In *Jett*, the Supreme Court found that Section 1983 of the Civil Rights Act provides the only remedy for violations of the rights guaranteed in Section 1981 of the same Act.   *See, Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).   The Fourth Circuit affirmed this ruling in *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).   There, the Fourth Circuit held that discrimination claims against state actors, specifically a county government in that case, must be brought under Section 1983, as that "is the 'exclusive remedy for violation of the rights guaranteed in § 1981.'"   *Id.* (quoting *Jett*, 491 U.S. at 733).   The *Dennis* court specifically explained in its finding that it "[did] not believe that this aspect of *Jett* was affected by the Civil Rights Act of 1991 . . . We think the correct reading of the amendment . . . recognizes that [the addition of] subsection (c) [to § 1981] did not purport to overrule *Jett's* holding with respect to municipal

17

liability . . . ." *Dennis*, 55 F.3d at 56; *see also*, *Toomer-Frazier v. Columbia, City of*, 680 F. App'x 244, 245 (4th Cir. 2017).

The Plaintiff argues that the Court should disregard the holdings of *Jett* and *Dennis*. In reliance on *Stout v. Reuschling*, a case from the United States District Court for the District of Maryland, the Plaintiff argues that Jett and Dennis merely stand for the proposition that Section 1981 claims cannot be asserted as independent causes of action against a state or municipal entity only. *See*, *Stout v. Reuschling*, No. CIV.A. TDC-14-1555, 2015 WL 1461366, at *7 (D. Md. Mar. 27, 2015).

The Court is not persuaded by the ruling in *Stout*. While the Stout court's analysis is based on the 1991 amendments to the Civil Rights Act, the Fourth Circuit specifically explained in Dennis that it did not believe those amendments altered the Supreme Court's holding in *Jett*. Given the rulings of the Supreme Court and the Fourth Circuit, the Court finds that Section 1981 does not provide an independent cause of action. The Plaintiff's claims in Count III should be dismissed.

### K. *Conspiracy to Interfere Pursuant to 42 U.S.C. § 1985(3)*

The Defendants further argue that the Plaintiff has failed to properly plead a claim against them for conspiracy to interfere with constitutional rights in violation of 42 U.S.C. § 1985(3) in Count V of the amended complaint. The Defendants argue that Mr. Ali has failed to allege with any specificity which of the Defendants agreed to the conspiracy, any specific racial animus or racial bias, or any racially motivated acts. Thus, the Defendants argue that the Section 1985(3) claim in Count V should be dismissed.

The Plaintiff counters that he has appropriately pled a conspiracy between two or more people by alleging that Defendants Redden and Epling were motivated by specific class-based, discriminatory animus against him in retaliation for challenging his termination and because of his intent to sue the Defendants for racial discrimination. He has further pled that Defendant Redden and others deprived him of the equal enjoyment of rights under the law and caused him injuries by their overt acts. Mr. Ali therefore claims he has sufficiently pled a plausible claim for conspiracy to violate his civil rights.

Section 1985(3) provides:

> If two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]…[I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). This cause of action is directed at those who conspire to deprive protected classes of people of their rights. *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985). The federal remedy, construed broadly, is for "conspiracies involving invidious animus toward a class of persons" who are not adequately protected by the state. *Id.* at 1258 (internal quotation marks omitted). The elements of proof for a § 1985(3) cause of action are: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants

in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing *Buschi*, 775 F.2d at 1257).

The Court finds that the Plaintiff has sufficiently alleged facts to state a claim for conspiracy under 1985(3). First, the Plaintiff has stated sufficient allegations to meet the conspiracy elements. He alleges that the Defendants Redden, Pack, Epling and Snuffer got together to falsely create the probable cause necessary to arrest the Plaintiff and to coordinate testimony to deprive the Plaintiff of equal enjoyment of his lawful rights in a manner that resulted in his injury as a consequence of an overt act. The Plaintiff also satisfies the discriminatory animus element because he alleges that the Defendants committed these actions at the behest of Defendant Tanner, who was acting with discriminatory animus relating to the Plaintiff's race and his intent to sue Defendant Tanner and Raleigh County in a discrimination lawsuit.

Assuming these allegations to be true, the Plaintiff has sufficiently stated a plausible claim for relief pursuant to 42 U.S.C. § 1985(3). The Defendants' motion to dismiss Count V should be denied.

### L. Neglect to Prevent Conspiracy

The Defendants also seek to dismiss the Plaintiff's claim in Count VI for neglect to prevent a conspiracy to interfere with the Plaintiff's rights. The Defendants argue that the Plaintiff failed to bring this claim within the one-year statute of limitations. According to the Defendant, the statute of limitations on the Plaintiff's claim began to accrue on June 23, 2015, the day he was arrested, resulting in the expiration of the statute of limitations on June 23, 2016. The Plaintiff did not bring the suit until June 23, 2017, however, prompting the Defendants' argument that this claim should be dismissed.

The Plaintiff counters that, although the statute of limitations is indeed a year on this claim, the limitations period begins to accrue from the last act that caused the plaintiff an injury. The Plaintiff argues that the last act causing him injury was his second criminal trial, which ended in his acquittal on May 26, 2017. Thus, the Plaintiff contends that the statute of limitations period did not expire until May 26, 2018. Although not specifically stated in his amended complaint, the Plaintiff brings the claim in Count VI pursuant to 42 U.S.C. § 1986, which states, in pertinent part, that

> [e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act . . . .

Further, in order to maintain a cause of action under Section 1986, a plaintiff must have sufficiently set forth a cause of action under Section 1985, because Section 1986 "merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985." *Sellner v. Panagoulis*, 565 F. Supp. 238, 249 (D. Md. 1982), *aff'd,* 796 F.2d 474 (4th Cir. 1986).

The Court finds that the Plaintiff has pled sufficient facts to support a claim under Section 1986. Section 1986 specifically states that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." The Plaintiff alleges that he was arrested on June 23, 2015, and that the Defendants conspired together to find unlawful and improper probable cause to arrest him. However, the Plaintiff also alleges that the Defendants continued to conspire against him by coordinating their testimony in the time leading up to the trial, giving false testimony during pre-trial hearings and trial, and by talking to witnesses in a manner that caused the first trial to end in a mistrial. Accepting these allegations

as true, is it clear that the Defendants continued to conspire against the Plaintiff at least up until the time of his second trial, which began in May of 2017. Given these allegations, the statute of limitations began to accrue in May of 2017. Because the Plaintiff brought his action under 42 U.S.C. § 1986 on June 23, 2017, the claim in Count VI is not barred by the applicable statute of limitations.

The Court has reviewed the *Plaintiff's Motion for Leave to Exceed Page Limit* (Document 17). The Plaintiff moves to exceed the established twenty (20) page limit in his response in opposition to Defendants Raleigh County, Raleigh County Sheriff's Department, and Steven Tanner's motion to dismiss Plaintiff's complaint. The Plaintiff seeks to file a response of twenty-five (25) pages in length. After careful consideration, the Court **ORDERS** that the motion be **GRANTED.**

## CONCLUSION

WHEREFORE, after careful consideration, the Court **ORDERS** that the *Defendant Raleigh County, Raleigh County Sheriff's Department, and Steven Tanner's Motion to Dismiss the Plaintiff's Complaint* (Document 7) be **GRANTED IN PART** and **DENIED IN PART.** Specifically, the Court **ORDERS** that the claims in Counts I, II and III be **DISMISSED**. With respect to Defendant Raleigh County, the Court **ORDERS** that Counts IV, VII, VIII, IX, X, and XI be **DISMISSED**. As to Defendant Steven Tanner, the Court **ORDERS** that all claims against him in his official capacity as Sheriff of Raleigh County be **DISMISSED**, and that Counts I and II be **DISMISSED** against him in his individual capacity. The Court **ORDERS** that all claims against the Raleigh County Sheriff's Department be **DISMISSED**. Otherwise, the Court **ORDERS** that the motion be **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    March 29, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA