**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

MARQUEL ALI,

                    Plaintiff,

v.                                                      CIVIL ACTION NO.   5:17-cv-03386

RALEIGH COUNTY, et al.

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants Gary Epling and Jason Redden's Motion to Dismiss the Plaintiff's Complaint* (Document 9) and *Memorandum of Law in Support* (Document 11), the *Plaintiff's Response in Opposition* (Document 20), and the *Defendants Gary Epling and Jason Redden's Reply to the Plaintiff's Response* (Document 29).   The Court has also reviewed the Plaintiff's *Complaint* (Document 1), *Amended Complaint* (Document 23), and all attached exhibits.   For the reasons stated herein, the Court finds that the motions should be granted in part and denied in part.

**FACTUAL ALLEGATIONS**

The Plaintiff, Marquel Ali, initiated this action with a complaint filed in this Court on June 23, 2017.   The Plaintiff originally named the following entities as Defendants: Raleigh County, a municipal corporation organized under the laws of the State of West Virginia, Raleigh County Sheriff's Department (Sheriff's Department), a law enforcement agency established, maintained, and controlled by Raleigh County, the City of Beckley, a municipal corporation organized under

the laws of the State of West Virginia, Beckley Police Department (BPD), a law enforcement agency established, maintained, and controlled by the City of Beckley, and the West Virginia State Police (WVSP), a state law enforcement agency organized under the laws of the State of West Virginia. Mr. Ali also named several individuals as Defendants, in both their individual and official capacities: Mr. Steven Tanner, a resident of Raleigh County, West Virginia, and the Sheriff of Raleigh County during the applicable time frame, Mr. Gary Epling, a resident of Raleigh County, West Virginia, and a detective with the Raleigh County Sheriff's Department, Mr. Kenneth Pack, a resident of Raleigh County, West Virginia, and an officer with the WVSP, Mr. David Snuffer, a resident of Raleigh County, West Virginia, and an officer with the BPD, and Mr. Jason Redden, a citizen of Raleigh County, West Virginia, and, during the applicable time, a parole officer with the West Virginia Department of Corrections.[1] (Amended Compl. at ¶¶ 2-13.)[2] The Plaintiff alleges that "all acts of the Defendants were done . . . under the color and pretense of [the law] of the State of West Virginia and under the authority of the office" by which they were employed. (*Id.* at ¶ 14.)

Mr. Ali, "an African American male with a dark complexion," was hired by the Defendant Raleigh County Sheriff's Department as a deputy and began his employment on March 18, 2014. (*Id.* at ¶ 1, 17.) The Sheriff's Department requires all new hires to complete a probationary year

---

[1] Subsequent to the time period in which most of the Plaintiff's allegations took place, Mr. Redden became a deputy with the Defendant Raleigh County Sheriff's Department. The Plaintiff does not specifically allege when Mr. Redden became a deputy sheriff.

[2] On June 7, 2017, Mr. Ali filed a *Motion for Leave to File Amended Complaint* (Document 4). While that motion was pending, the parties proceeded to brief the pending motions to dismiss. While those motions were being fully briefed, this Court issued its *Order* (Document 22) granting the motion and ordering the Plaintiff's amended complaint to be filed. After the granting of this motion, the Defendants proceeded to fully brief their motions to dismiss the original complaint. Because arguments presented by the parties in the motions to dismiss were not substantively altered by the filing of the amended complaint, the Court applies those arguments to the Plaintiff's amended complaint.

during which they receive on-the-job training and attend the West Virginia State Police Academy. According to the Plaintiff, four other new deputies were hired at the same time as him, and one of them was also an African American. The other African American had a "very light complexion," as alleged by Mr. Ali. (*Id.* at ¶ 19.) Mr. Ali alleges that he was, in fact, "the only African American officer employed with the Defendant Sheriff's Department who had a dark complexion." (*Id.* at ¶ 21.)

Mr. Ali alleges that, throughout his employment with the Defendant Sheriff's Department, he was frequently subjected to racial slurs and other inappropriate treatment. Defendant Tanner would often call him "boy" or refer to him as a "thug," other white officers would place bets on whether he would make it through his training at the police academy, and he would often receive write-ups while white officers "who engaged in the same activity were not issued any form of reprimand or other discipline." (*Id.* at ¶ 23-28.) On March 16, 2015, Mr. Ali was subjected to an interrogation regarding allegations by someone he had arrested. A white officer was present with Mr. Ali when he made the arrest, but was not subjected to the same interrogation and investigation. On the following day, "one day prior to the end of his one year probationary period," Mr. Ali was terminated from his employment by Defendant Tanner. (*Id.* at ¶ 38.) Mr. Ali appealed his termination to the Raleigh County Civil Service Commission, and attended a hearing on June 2, 2015. The parties were required to submit proposed findings of fact and conclusions of law to the Commission by June 22, 2015.

On June 23, 2015, one day after the submission of those findings of fact, the Plaintiff's cousin contacted him and asked for a ride. The Plaintiff's cousin was on parole at the time and owned no vehicle, so the Plaintiff agreed to pick him up. Prior to picking up his cousin, Mr. Ali

received a phone call from a State Trooper regarding a case he had worked on while a deputy. The trooper asked the Plaintiff if he was currently in Beckley. Mr. Ali stated that he was in Beckley, and proceeded to pick up his cousin some twenty minutes later. While in route to do so, "[a]pproximately one-half mile from the residence . . . Plaintiff noticed several unmarked police cars parked in a car wash parking lot." (*Id.* at ¶ 53.) Mr. Ali proceeded to his cousin's house where, after waiting several minutes, his cousin placed a bag in the trunk and got in the car. The two decided to go to Burger King, and when exiting the drive through with their food, the Plaintiff's car was "barricaded in by several unmarked police cars, including the cars Mr. Ali had seen near the residence when he picked up his cousin." (*Id.* at ¶ 61.) "The officers who were involved in the traffic stop knew Mr. Ali and the vehicle he drove," and also "knew that [Mr. Ali] owned a personal firearm . . . ." (*Id.* at ¶ 62.)

One of the officers approached Mr. Ali at gunpoint and asked him if he had a firearm. Although Mr. Ali responded that he did not have a firearm in the car, he was forced to the ground and handcuffed. After the Defendant officers had begun searching his car, Mr. Ali was asked to sign a consent form, and signed it, although it "had been previously completed by Defendants and/or agents of Defendants and was also incorrectly dated '6-22-2015.'" (*Id.* at ¶ 70.) After signing the form, the Plaintiff saw Defendant Epling "approach the back of the car carrying a mid-to-large sized brown or manila color envelope/package." (*Id.* at ¶ 73.) Upon completing the search of the vehicle, the Defendants allegedly found illegal drugs in the trunk and a small amount of marijuana on the Plaintiff's cousin. Both the Plaintiff and his cousin were arrested. The Plaintiff was charged with two counts of possession of a controlled substance with intent to deliver and conspiracy to commit a felony. "After Mr. Ali was arrested, the State Trooper who had called

4

[him] less than an hour earlier to confirm [he] was in Beckley, arrived at the scene and transported Mr. Ali to the Beckley State Police office, then to jail." (*Id.* at ¶ 80.) According to Mr. Ali, the Defendants conspired together to wrongfully and maliciously arrest and prosecute him in retaliation for his intent to bring a discrimination lawsuit against Defendant Raleigh County Sheriff's Department and Defendant Tanner.

The Defendants interrogated Mr. Ali and his cousin and conducted a criminal investigation of the charges, during which time the Defendants proactively "took steps to hide [] exculpatory evidence from Mr. Ali for nearly two years." (*Id.* at ¶ 100.) "Over the nearly two years following Mr. Ali's arrest, Defendants failed and/or refused to disclose or produce material evidence related to Mr. Ali's case despite repeated requests by Mr. Ali's counsel." (*Id.* at ¶ 103.) The Defendants also made various false claims regarding why they pulled the Plaintiff over in the Burger King parking lot. On February 13, 2017, Mr. Ali's first criminal trial began in the Circuit Court of Raleigh County, West Virginia. On February 15, after being informed that certain individuals in court had been seen speaking with potential defense witnesses in the hallway, the court declared a mistrial *sua sponte*. On May 22, 2017, a second criminal trial began on the same charges. On May 26, 2017, after a four-day trial, the jury returned a defense verdict, finding Mr. Ali not guilty on all charges. Not quite three months later, Mr. Ali filed this action.

Mr. Ali's amended complaint sets forth eleven counts: Count I - Race Discrimination, Count II - Color Discrimination,[3] Count III - Discrimination and Interference with Plaintiff's Right to Equal Benefit of the Law in Violation of 42 U.S.C. § 1981, Count IV - Warrantless Arrest Pursuant to False Tip in Violation of 42 U.S.C. § 1983, Count V - Conspiracy to Interfere with

---

3 The Plaintiff asserts the first two causes of action only against the Raleigh County Sheriff's Department and Defendant Tanner.

Constitutional Rights in Violation of 42 U.S.C. § 1985(3), Count VI - Neglect to Prevent Conspiracy to Interfere with Plaintiff's Rights, Count VII - False/Wrongful Arrest and Improper Investigation and Prosecution in Violation of 42 U.S.C. § 1983, Count VIII - Abuse of Process, Count IX - Malicious Prosecution, Count X - Negligent Infliction of Emotional Distress, and Count XI - Outrage.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id.* Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice…
[because courts] 'are not bound to accept as true a legal conclusion couched as a factual
allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555
(2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,
accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678
(quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff
to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v.
Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) In the
complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff
has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S.
at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which
can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court
to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Defendants Gary Epling and Jason Redden, in their capacities as officers of the Raleigh
County Sheriff's Department, move for dismissal of the Plaintiff's amended complaint on several
grounds.

### A. *Qualified Immunity*

Defendants Epling and Redden argue that they are entitled to qualified immunity from the
Plaintiff's claims brought pursuant to 42 U.S.C. § 1983. They argue that the Plaintiff has failed
to properly plead that their conduct was not reasonable under the circumstances, or that they

violated a clearly established constitutional right.   Defendant Epling asserts that he and the other Defendant officers had reasonable suspicion to believe the Plaintiff was involved in illegal activity such that the stop, search, and eventual arrest were reasonable under the circumstances.   Thus, Defendant Snuffer argues that he is immune from the Plaintiff's Section 1983 claims.   Defendant Redden argues similarly, and further argues that he was a parole officer at the time of the Plaintiff's arrest and not yet a deputy sheriff.   Thus, he also argues he is immune from the Plaintiff's claims under qualified immunity principles.

The Plaintiff counters that he has sufficiently alleged "several violations of his constitutional rights" in the amended complaint.   (Pl.'s Resp. in Opposition at 12.)   He contends that he alleged an improper arrest without a warrant based on knowingly manufactured probable cause, an improper investigation, and a conspiracy to doctor testimony and hide exculpatory evidence from him.   Given these allegations, the Plaintiff claims he has stated plausible facts sufficient to overcome a motion to dismiss on grounds of qualified immunity.

Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Tomashek v. Raleigh Cty. Emergency Operating Ctr.*, No. 2:17-CV-01904, 2018 WL 522420, at *3 (S.D.W. Va. Jan. 23, 2018) (Goodwin, J.) (quoting *Maciariello v. Sumner*, 973 F.3d 295, 298 (4th Cir. 1992)).   Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties."   *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.)

Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32. Courts are advised to "ask first whether a constitutional violation occurred and second whether the right violated was clearly established."[4] *Id.* "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted); Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but . . . that in the light of pre-existing law the unlawfulness must be apparent."). The reasonableness analysis is objective. Courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident." *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994). "[T]he officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are." *Id.* at 173.

Accepting the allegations as true and drawing all reasonable inferences in the Plaintiff's favor, the Court finds that Defendants Epling and Redden[5] have not shown they are entitled to qualified immunity. The Plaintiff asserts that the Defendants participated in a warrantless arrest

---

4 "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Smith v. Ray*, 781 F.3d 95, 106, fn 3 (4th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

5 At the outset, the Court notes that it has previously found no qualified immunity for the purposes of a motion to dismiss regarding Defendant Redden in his capacity as a parole officer at the time of the Plaintiff's arrest. While this motion only applies to Defendant Redden in his capacity as a deputy sheriff for the Raleigh County Sheriff's Department, the Plaintiff alleges that Defendant Redden's part in the conspiracy against him continued after his transition to the Raleigh County Sheriff's Department.

pursuant to a false tip, a false or wrongful arrest and improper investigation, abuse of process, and malicious prosecution in violation of Section 1983. He alleges that the Defendants sought to maliciously arrest and prosecute him in retaliation for challenging his termination to the civil service commission and because he intended to sue the Raleigh County Defendants regarding his termination. He states that his cousin was in the vehicle when the Defendants initiated the interaction in question, and Plaintiff admits that his cousin was on parole, was being monitored by an ankle bracelet, and that at some point during the interaction the Defendants told him they were looking for his cousin in reference to a hold and commit order by his parole officer.

However, the Plaintiff also alleges that the Defendant officers knowingly worked in conjunction with Defendant Redden to purposefully delay arresting the Plaintiff's cousin until he was with the Plaintiff, and that it was this delay that allowed the Defendants to ascertain the improper probable cause to initiate the traffic stop of the Plaintiff. In other words, the Plaintiff alleges that Defendant Epling and the other Defendants worked with Defendant Redden as a parole officer to stop the Plaintiff when they knew they had no other legitimate reasonable suspicion or probable cause to stop and eventually arrest him. Mr. Ali further implies that the Defendants potentially planted evidence in his car during the search. Moreover, Mr. Ali alleges that after he was hired by the Raleigh County Sheriff's Department as a deputy sheriff, Defendant Redden continued to take part in the conspiracy against him by coordinating his testimony with other Defendants and assisting in the other Defendants' failure to turn over exculpatory evidence.

Accepting those allegations as true, the Plaintiff has appropriately stated causes of action under Section 1983 for several constitutional violations. The requirement that law enforcement officers have probable cause before making an arrest is a clearly established right. While

Defendant Epling may have had sufficient probable cause to arrest the Plaintiff's cousin, that probable cause did not extend to the Plaintiff without the necessary scheme that the Plaintiff alleges here. Further, Defendant Redden continued to be involved in the alleged improper investigation and prosecution after the arrest. Conspiring together to initiate this scheme against the Plaintiff in a malicious and retaliatory manner violates clearly established constitutional rights, and the Defendants' qualified immunity defense should be denied.

### B. Immunity Under W.Va. Code § 29-12A-5(b)

Defendants Epling and Redden argue that they are entitled to immunity from the Plaintiff's claims pursuant to West Virginia Code § 29-12A-5(b). The Defendants assert that the statutory language in Section 29-12A-5(b) absolves them from liability for actions done in the scope of their employment as employees of a municipality or political subdivision, and that all of the actions the Plaintiff alleges were done within the scope of their employment. The Plaintiff argues that he has clearly alleged the Defendants acted willfully and maliciously, and that they are not immune from suit.

West Virginia Code § 29-12A-5(b) states that

> [a]n employee of a political subdivision is immune from liability unless . . . (1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) liability is expressly imposed upon the employee by a provision of this code.

The Court finds that the Plaintiff has alleged sufficient facts such that the Defendants are not entitled to immunity under this section at this stage of litigation. The Plaintiff alleges that these Defendants maliciously acted in concert with the other Defendant officers to improperly stop him, arrest him, deprive him of evidence essential to his case, and take part in his malicious

prosecution. Assuming the allegations described by the Plaintiff in his amended complaint to be true, the Defendants' actions were done with a malicious purpose and in bad faith, and they are not entitled to immunity. Thus, Defendant Epling and Redden's motion to dismiss the Plaintiff's claims pursuant to West Virginia Code § 29-12A-5(b) should be denied.

### C. Defendants Epling and Redden in their Official Capacity

The Defendants move for dismissal of the claims against them in their official capacity as officers with the Raleigh County Sheriff's Department. The Defendants argue that claims in this manner cannot proceed because they are merely suits against the entity. The Plaintiff concedes the same in his response and argues that, although the claims may continue against Defendants in their individual capacity, the claims against them in their official capacity should be dismissed pursuant to *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Court finds that the claims against Defendants Epling and Redden in their official capacity should be dismissed.

### D. 42 U.S.C. § 1981 Claim

Defendants Epling and Redden next seek dismissal of the Plaintiff's claims in Count III brought pursuant to 42 U.S.C. § 1981. The Defendants argue that the Plaintiff's claim for discrimination and interference with his rights to equal benefits under the law should have been brought pursuant to 42 U.S.C. § 1983 as opposed to 42 U.S.C. § 1981. The Defendants base their claim on the United States Supreme Court holding in *Jett v. Dallas Independent School District* that Section 1983 is the exclusive remedy for a claim against a state actor accused of violating rights secured under Section 1981. The Plaintiff disagrees. He argues that the holding in *Jett* is inappropriate given the 1991 amendments to the Civil Rights Act, and asks this Court to disregard

both the holding in *Jett* and the Fourth Circuit's affirmation of it to find that the Plaintiff can plead a claim for discrimination under Section 1981 against state actors in their individual capacities.

In *Jett*, the Supreme Court found that Section 1983 of the Civil Rights Act provides the only remedy for violations of the rights guaranteed in Section 1981 of the same Act. *See*, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). The Fourth Circuit affirmed this ruling in *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). There, the Fourth Circuit held that discrimination claims against state actors, specifically a county government in that case, must be brought under Section 1983, as that "is the 'exclusive remedy for violation of the rights guaranteed in § 1981.'" *Id.* (quoting *Jett*, 491 U.S. at 733). The *Dennis* court specifically explained in its finding that it "[did] not believe that this aspect of *Jett* was affected by the Civil Rights Act of 1991 . . . We think the correct reading of the amendment . . . recognizes that [the addition of] subsection (c) [to § 1981] did not purport to overrule *Jett's* holding with respect to municipal liability . . . ." *Dennis*, 55 F.3d at 56; *see also*, *Toomer-Frazier v. Columbia, City of*, 680 F. App'x 244, 245 (4th Cir. 2017).

The Plaintiff argues that the Court should disregard the holdings of *Jett* and *Dennis*. In reliance on *Stout v. Reuschling*, a case from the United States District Court for the District of Maryland, the Plaintiff argues that Jett and Dennis merely stand for the proposition that Section 1981 claims cannot be asserted as independent causes of action against a state or municipal entity only. *See*, *Stout v. Reuschling*, No. CIV.A. TDC-14-1555, 2015 WL 1461366, at *7 (D. Md. Mar. 27, 2015).

The Court is not persuaded by the ruling in *Stout*. While the *Stout* court's analysis is based on the 1991 amendments to the Civil Rights Act, the Fourth Circuit specifically explained

in *Dennis* that it did not believe those amendments altered the Supreme Court's holding in *Jett*. Given the rulings of the Supreme Court and the Fourth Circuit, the Court finds that Section 1981 does not provide an independent cause of action, and the Plaintiff's claims in Count III[6] should be dismissed.

### E.   Warrantless Arrest Pursuant to False Tip in Violation of 42 U.S.C. § 1983

The Defendants specifically seek dismissal of the Plaintiff's claims brought in Count IV alleging Warrantless Arrest Pursuant to False Tip in Violation of 42 U.S.C. § 1983.   The Plaintiffs argue that this claim is subject to a one-year statute of limitations, and that the statute of limitations began to accrue when the Plaintiff was arrested on June 23, 2015.   Because the Plaintiff did not bring this claim until June 23, 2017, the Defendants argue it is barred by the statute of limitations and should be dismissed.   The Defendants further argue that the Plaintiff has failed to properly plead this claim against Defendant Epling, and it should also be dismissed for that reason.

The Plaintiff argues that the claim in Count IV is not barred by the statute of limitations. He contends that the statute of limitations on Section 1983 claims in West Virginia is two years rather than one.   He further contends that, even if the applicable statute of limitations is one year, the time limit did not begin to accrue until he was acquitted in May of 2017.   Thus, he argues his claim in Count IV is viable.

At the outset, the Court finds that the Plaintiff has sufficiently alleged facts to support a claim against Defendant Epling in Count IV.   The Plaintiff has alleged that Defendant Epling was

---

6 The Court notes that in his separate motion to dismiss the complaint against him in his capacity as a parole officer for the West Virginia Division of Corrections, Defendant Redden did not raise an argument for dismissal as to the claims in Count III, and the Court therefore did not address that count in its opinion.   However, insofar as the Court has found that Section 1981 does not create an independent cause of action, said finding should apply to Defendant Redden in his capacity as a parole officer as well.

one of the officers present during his arrest in which no warrant was obtained, that he had knowledge of the employment dispute between the Plaintiff and the Raleigh County Sheriff's Department, and that Defendant Epling acted maliciously with the other Defendants in arresting him while knowing the alleged illegal activity was false. Accepting the allegations to be true, the Plaintiff has satisfactorily alleged a claim of warrantless arrest that should proceed against Defendant Epling.

Further, Mr. Ali's claim in Count IV is brought pursuant to 42 U.S.C. § 1983. While Section 1983 itself has no federally-provided statute of limitations, "in accordance with West Virginia Code § 55-2-12(b), the applicable statute of limitations for [Section] 1983 actions is two years." *Morales v. Robinson*, No. CIV A 205-0509, 2007 WL 1074836, at *4 (S.D.W. Va. Apr. 6, 2007) (Copenhaver, J.) (citing *Bell ex rel. Bell v. Bd. of Educ. of Cty. of Fayette*, 290 F. Supp. 2d 701, 709 (S.D.W. Va. 2003)); *Sattler v. Johnson*, 857 F.2d 224, 226-27 (4th Cir 1988).

However, even if the appropriate statute of limitations regarding this claim is one year, the Court finds that the Plaintiff's statute of limitations did not begin to accrue until the time of his acquittal based on the "continuing violation" rule. *See*, *Smith v. Allred*, No. 2:15-CV-06026, 2016 WL 1274593, at *11 (S.D.W. Va. Mar. 31, 2016). Under the West Virginia "continuing violation" rule, "continuing misconduct . . . serves to toll the statute of limitations under the continuing tort doctrine. Where a tort involves a continuing or repeated injury, the cause of action accrues at, and the statute of limitations begins to run from, the date of the last injury or when the tortious overt acts or omissions cease." *Id.* (quoting *Roberts v. W. Virginia Am. Water Co.*, 655 S.E.2d 119, 124 (W.Va. 2007). The Plaintiff has alleged not only that the Defendants conspired together to create false probable cause to arrest him without a warrant, but that they used that arrest

to maliciously and falsely prosecute him for crimes they knew he did not commit based on racial animus.  In other words, the Plaintiff's complaint alleges what amounts to continuing, ongoing acts that lasted until the Plaintiff was acquitted.  Thus, even if the statute of limitations on the Plaintiff's claim in Count IV was one year, it did not begin to run until he was acquitted in May of 2017.  The Defendants' motion to dismiss Count IV should therefore be denied.

### F.  Conspiracy to Interfere Pursuant to 42 U.S.C. § 1985(3)

The Defendants also argue that the Plaintiff has failed to properly plead a claim against them for conspiracy to interfere with constitutional rights in violation of 42 U.S.C. § 1985(3) in Count V of the amended complaint.   The Defendants argue that Mr. Ali has failed to allege with any specificity which of the Defendants agreed to the conspiracy, any specific racial animus or racial bias, or any racially motivated acts.   Thus, the Defendants argue that the Section 1985(3) claim in Count V should be dismissed.

The Plaintiff, however, argues that he has appropriately pled a conspiracy between two or more people by alleging that Defendants were motivated by specific class-based, discriminatory animus against him in retaliation for challenging his termination and because of his intent to sue the Defendants for racial discrimination.   He has further pled that Defendant Snuffer and others deprived him of the equal enjoyment of rights under the law and caused him injuries by their overt acts.   Mr. Ali asserts that he has sufficiently pled a plausible claim for conspiracy to violate his civil rights.

Section 1985(3) provides:

> If two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]…[I]n any case of

> conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). This cause of action is directed at those who conspire to deprive protected classes of people of their rights. *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985). The federal remedy, construed broadly, is for "conspiracies involving invidious animus toward a class of persons" who are not adequately protected by the state. *Id.* at 1258 (internal quotation marks omitted). The elements of proof for a § 1985(3) cause of action are: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing *Buschi*, 775 F.2d at 1257).

The Court finds that the Plaintiff has sufficiently alleged facts to state a claim for conspiracy under 1985(3). First, the Plaintiff has stated sufficient allegations to meet the conspiracy elements: he claims that the Defendants Redden, Pack, Epling, and Snuffer met together to falsely create the probable cause necessary to arrest the Plaintiff and to coordinate testimony in order to deprive the Plaintiff of equal enjoyment of his lawful rights in a manner that resulted in his injury as a consequence of an overt act. The Plaintiff also satisfies the discriminatory animus element because he alleges that the Defendants committed these actions at the behest of Defendant Tanner, who was acting with discriminatory animus relating to the

Plaintiff's race and Plaintiff's intent to sue Defendant Tanner and Raleigh County in a discrimination lawsuit.

Assuming these allegations to be true, the Defendants' motion to dismiss Count V, brought pursuant to 42 U.S.C. § 1985(3), should be denied.

### G. Neglect to Prevent Conspiracy

The Defendants also argue that the Plaintiff's claim in Count VI for neglect to prevent a conspiracy to interfere with the Plaintiff's rights should be dismissed. The Defendants argue that the Plaintiff failed to bring this claim within the one-year statute of limitations. According to the Defendant, the statute of limitations on the Plaintiff's claim began to accrue on June 23, 2015, the day he was arrested, resulting in the expiration of the statute of limitations on June 23, 2016. The Plaintiff did not bring this lawsuit until June 23, 2017, however, and the Defendants argue that this claim should therefore be barred.

The Plaintiff counters that, although the statute of limitations is indeed one year on his claim of neglect to prevent a conspiracy pursuant to Section 1986, the limitations period begins to accrue from the last act that caused the plaintiff an injury. The Plaintiff argues that the last act causing him injury was his second criminal trial, which ended in his acquittal on May 26, 2017. Thus, the Plaintiff contends that the statute of limitations period was not over until May 26, 2018, and his claim in Count VI should survive.

Although not specifically stated in his amended complaint, the Plaintiff brings the claim in Count VI pursuant to 42 U.S.C. § 1986, which states, in pertinent part, that

> [e]very person who, having knowledge that any of the wrongs
> conspired to be done, and mentioned in section 1985 of this title, are
> about to be committed, and having power to prevent or aid in
> preventing the commission of the same, neglects or refuses so to do,

> if such wrongful act be committed, shall be liable to the party injured
> . . . for all damages caused by such wrongful act . . . .

Further, in order to maintain a cause of action under Section 1986, a plaintiff must have sufficiently set forth a cause of action under Section 1985, because Section 1986 "merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985." *Sellner v. Panagoulis*, 565 F. Supp. 238, 249 (D. Md. 1982), *aff'd,* 796 F.2d 474 (4th Cir. 1986).

The Court finds that the Plaintiff has pled sufficient facts to support his Section 1986 claim. Section 1986 specifically states that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." The Plaintiff alleges that he was arrested on June 23, 2015, and that the Defendants conspired together to find unlawful and improper probable cause in order to arrest him. The Plaintiff further alleges that the Defendants continued to conspire against him by coordinating their testimony in the time leading up to the trial, giving false testimony during pre-trial hearings and trial, withholding evidence from him, and talking to witnesses in a manner that caused the first trial to end in a mistrial. Accepting these allegations as true, it is clear that the Defendants continued to conspire against the Plaintiff at least up until the time of his second trial, which began in May of 2017. Given these allegations, the statute of limitations began to accrue in May of 2017. Because the Plaintiff brought his action under 42 U.S.C. § 1986 on June 23, 2017, the claim in Count VI is not time-barred. The motion to dismiss Count VI as to Defendants Epling and Redden should be denied.

### H.  False Arrest and Improper Investigation Pursuant to 42 U.S.C. § 1983

The Defendants move to dismiss Count VII of the Plaintiff's complaint. The Defendants argue that the Plaintiff has failed to allege sufficient facts to satisfy the pleading standard set forth

in the Federal Rules of Civil Procedure. Specifically, the Defendants argue that the Plaintiff has failed to properly allege any facts that state how Defendants Epling and Redden falsely arrested or improperly investigated and prosecuted the Plaintiff, what property they improperly seized from him, what documents they failed to provide, or what property they failed to return to him. Further, the Defendants argue that the Plaintiff's generalized reference to "the Defendants" in his amended complaint is not sufficient to satisfy the pleading standard.

The Plaintiff argues that he has alleged Defendants Epling and Redden knew of the conspiracy instituted by Defendant Tanner to falsely arrest him. He further argues that Defendants Epling, and Redden, after he was hired as a deputy, worked in concert with the other Defendant officers to hide evidence that proved Mr. Ali was innocent and coordinated their testimonies, and that his claim against Defendants Epling and Redden in Count VII should survive.

42 U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

With respect to the arrest and investigation alleged here, the Fourth Amendment mandates that a warrantless arrest be based on probable cause. *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998); *Park v. Shiflett*, 250 F.3d 843, 850-51 (4th Cir. 2001). An officer must evaluate probable cause based on the totality of the circumstances at the time of the arrest, and establishes

it with "facts and circumstances within the officer's knowledge [which] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *Park*, 250 F.3d at 851 (quoting *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984)).

The Plaintiff has alleged that the Defendants conspired together to use the Plaintiff's cousin and a false tip to manufacture probable cause to arrest the Plaintiff, without a warrant, on falsely manufactured drug charges. With respect to Defendant Redden in his capacity as a deputy sheriff, the Plaintiff has alleged that he, Defendant Epling, and the other Defendants knew the Plaintiff had not committed the crimes for which he was charged, but used blatantly false information to arrest him. Mr. Ali has further alleged that the Defendants worked together to coordinate their testimony and sworn statements, to withhold evidence from the Plaintiff, and to drag his prosecution along for years. Accepting these factual allegations as true, and drawing all reasonable inferences in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has pled sufficient facts to state a claim based on these Defendants' violation of the Plaintiff's Fourth Amendment right not to be arrested without a warrant or probable cause. The Defendants' motion to dismiss Count VII against Defendants Epling and Redden should be denied.

### I. Abuse of Process

The Defendants seek dismissal of the Plaintiff's claim for abuse of process brought in Count VIII of the amended complaint. They argue the Plaintiff has alleged no specific facts regarding how Defendants Epling and Redden unlawfully arrested, detained, or prosecuted the Plaintiff. The Defendants also assert that the abuse of process claim is barred by the statute of limitations because it must have been brought within one year of his arrest on June 23, 2015. Mr. Ali argues that Defendants Epling and Redden's intentional and malicious actions and testimony

during and after his arrest contributed to and were relied upon in indicting the Plaintiff and eventually trying him twice, and that his abuse of process claims should proceed.

Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Preiser v. MacQueen*, 352 S.E.2d 22, 28 (W.Va. 1985). "To properly state a claim for abuse of process, a plaintiff must allege: first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." *Westfield Ins. Co. v. Mitchell*, No. 2:12-CV-00585, 2013 WL 4742832, at *4 (S.D.W. Va. Sept. 3, 2013) (internal citations omitted). According to the West Virginia Supreme Court, "[t]he authorities are practically unanimous in holding that to maintain the action [for abuse of process] there must be proof of a willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object—an intentional and willful perversion of it to the unlawful injury of another." *Preiser*, 352 S.E.2d at 28.

The Court finds that the Plaintiff has sufficiently pled the required elements of a cause of action for abuse of process such that Count VIII should survive this motion to dismiss. The Plaintiff alleges in his complaint that the Defendants conspired together to purposefully use the Plaintiff's cousin to provide the probable cause necessary to arrest him without a warrant and charge him with drug crimes, knowing that he was not actually involved in the trafficking of drugs. The Plaintiff further alleges that the Defendants arrested him in this improper manner in retaliation due to the Plaintiff's intention to challenge his firing from the Raleigh County Sheriff's Department on racial discrimination grounds. Viewing these allegations in the light most favorable to the Plaintiff, Mr. Ali has stated a claim for relief plausible on its face.

Further, the Court finds that Mr. Ali's abuse of process claim is not barred by the statute of limitations. As the Defendants correctly point out, the statute of limitations on an abuse of process claim in West Virginia is one year, and that action must be brought within one year from the termination of the acts which constitute the abuse for which the Plaintiff complains. *Preiser*, 352 S.E.2d at 29. The Plaintiff alleges that the Defendants not only committed an abuse of process when they wrongfully arrested the Plaintiff, but continued to do so as they conspired to coordinate their testimonies and failed to disclose exculpatory evidence to the Plaintiff. Thus, the alleged abuse of process continued well past the Plaintiff's arrest and was not terminated until the Plaintiff's acquittal in May of 2017. Given these allegations, the Defendants' motion to dismiss Count VIII should be denied.

*J.   Malicious Prosecution*

The Defendants move for dismissal of the Plaintiff's claim for malicious prosecution alleged in Count IX. They argue that the Plaintiff has not sufficiently pled elements of malicious prosecution under West Virginia law because he failed to allege that probable cause was not found by a judicial officer. The Defendants assert that the finding of probable cause by a judicial officer is evidence on its face that there was probable cause to initiate the prosecution, and because the Plaintiff failed to allege that there was no finding of probable cause, his malicious prosecution claim should be dismissed. The Plaintiff argues that he has alleged that there was no probable cause for the Defendants to arrest him, and that the magistrate judge who found probable cause did so because of the Defendants' misrepresentations and coordination of testimony. This, the Plaintiff contends, is sufficient to support his claim of malicious prosecution.

According to the West Virginia Supreme Court,

> [i]n an action for malicious prosecution, plaintiff must show: (1) that
> the prosecution was set on foot and conducted to its termination,
> resulting in plaintiff's discharge; (2) that it was caused or procured
> by defendant; (3) that it was without probable cause; and (4) that it
> was malicious. If plaintiff fails to prove any of these, he can not
> recover.

Syl. Pt. 3, *Hines v. Hills Dep't Stores, Inc.*, 454 S.E.2d 385, 387 (W.Va. 1994). In a separate line of cases, the West Virginia Supreme Court held that the requisite elements for a malicious prosecution were only three, and included "(1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff." Syl. Pt. 1, *Preiser*, 352 S.E.2d at 22.

The Plaintiff has sufficiently pled facts to satisfy the elements of malicious prosecution. Mr. Ali alleges that the Defendants conspired with Defendant Redden and other Defendant Officers to use what was probable cause to arrest the Plaintiff's cousin to manufacture a false probable cause to arrest him. The Plaintiff alleges that the Defendants did this knowingly and maliciously out of racial animus toward him in retaliation for his intention to file suit against the Raleigh County Defendants. The Plaintiff also alleges that, after his arrest, the Defendants coordinated their testimony throughout his prosecution and testified during his trial. Lastly, Mr. Ali alleges that after a jury verdict in his favor at the end of a second trial, the prosecution ended in his acquittal. Viewing these allegations in the light most favorable to the Plaintiff, the Court finds Defendants' motion to dismiss Count IX should be denied.

### K. Negligent Infliction of Emotional Distress

The Defendants also move for dismissal of the Plaintiff's claim for negligent infliction of emotional distress in Count X. The Defendants argue that the Plaintiff has failed to sufficiently plead the elements for the claim. The Defendants assert that a negligent infliction of emotional

24

distress must stem from the plaintiff being present at the scene of an event wherein the plaintiff witnesses the victim be injured. Because the Plaintiff alleged no facts of this kind, the Defendants argue that the claim in Count X should be dismissed.

The Plaintiff responds that the Defendants misstate the law on negligent infliction of emotional distress claims. According to the Plaintiff, such claims can also be brought when a plaintiff "shows facts sufficient to guarantee that the emotional damages claim is not spurious." (Pl.'s Mem. In Opposition at 29.) The Plaintiff contends that he has alleged such facts here and that this claim should not be dismissed.

Generally speaking, negligent infliction of emotional distress claims involve "a plaintiff [who] experience[s] serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct." Syl. Pt. 1, *Heldreth v. Marrs*, 425 S.E.2d 157, 158 (W.Va. 1992). "A claim for negligent infliction of emotional distress is applicable only to limited situations premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety." *Douglas Holding Co. v. City of Princeton*, No. CV 1:14-14200, 2016 WL 6909120, at *5 (S.D.W. Va. Mar. 31, 2016) (Faber, J.) (internal citations omitted).

The Plaintiff has asserted no set of facts to support such a claim, as he asserts that the Plaintiff negligently caused him emotional distress due to acts directed at him. Further, the Plaintiff's reliance on *Rodriguez v. Consolidation Coal Company* is spurious at best, because the plaintiff/appellee in *Rodriguez* brought the action alleging retaliatory discharge and seeking damages for negligent infliction of emotional distress after he was discharged for causing an accident in which "one of [his] hourly subordinates was killed." *Rodriguez v. Consolidation Coal*

*Co.*, 524 S.E.2d 672, 676 (W.Va. 1999). The Plaintiff further references *Ricottilli v. Summersville Memorial Hosp.*, 425 S.E.2d 629 (W.Va. 1992). However, this case involved a special "exception to the rule that liability may not be predicated upon negligence where the damage is limited to mental or emotional disturbance without accompanying physical injury." *Id.* at 634. This exception, "often referred to as the 'dead body exception,' permits recovery for emotional damages upon proof of the negligent mishandling of a corpse." *Id.* Neither of these cases support the Plaintiff's alleged cause of action. The Plaintiff's injuries fully and completely stem from alleged actions directed solely at him. The Defendants' motion to dismiss the claim of negligent infliction of emotional distress in Count X should be dismissed.

### L. Outrage

These Defendants seek to dismiss the Plaintiff's claim of outrage alleged in Count XI. They argue that the Plaintiff fails to allege such conduct that is so extreme and outrageous that it goes above and beyond conduct that was tortious or criminal in nature such that it satisfies the elements of the tort of outrage. The Plaintiff argues that the Defendants acted in a manner that was so extreme and outrageous that it went beyond the bounds of decency. He contends that Defendant Epling took part in unnecessarily removing him from his car at gunpoint and that both Defendants Epling and Redden played a critical part in a conspiracy that forced the Plaintiff to face two criminal trials. Had the Defendants' actions been effective to their fullest extent, the Plaintiff alleges he would have been subjected to several years in state prison for a crime Defendants Epling and Redden knew he did not commit. Thus, Mr. Ali claims the acts of the Defendants were sufficiently outrageous and extreme to satisfactorily plead a claim for the tort of outrage.

In West Virginia, the tort of outrage, or intentional infliction of emotional distress, follows the Restatement of Torts (Second): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982). The West Virginia Supreme Court has established the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998) (reaffirmed in *Hatfield v. Health Mgmt. Associates of W. Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008). The court further explained that "whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." Syl. pt. 4, *id.*

Courts have struggled to determine whether conduct may reasonably be considered outrageous. *Courtney v. Courtney*, 413 S.E.2d 418, 422 (W. Va. 1991) (reviewing several cases considering the question). Plaintiffs must make a showing that "the defendant's actions toward the plaintiff were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency" and be viewed as intolerable in a civilized society. *Travis*, 504 S.E.2d at 425. "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct. On the other hand, outrageous conduct can

include physical violence that causes bodily harm and emotional distress." *Courtney*, 413 S.E.2d at 423–424 (internal citations removed).

The Plaintiff has alleged that, by conspiring together with the other Defendant officers, Defendants Epling and Redden knowingly used false probable cause to arrest Mr. Ali without probable cause or a warrant. Mr. Ali alleges that the Defendants did so in order to inflict emotional distress and scare him in retaliation for his intention to file a discrimination lawsuit against Defendants Tanner and the Raleigh County Sheriff's Department. The Plaintiff further alleges that the Defendants falsely arrested and accused him, hid evidence from him, and forced him to face trial two times, at the risk of serving years in prison for crimes the Defendants knew he did not commit. Viewing these allegations in the light most favorable to the Plaintiff, the Court finds that the alleged conduct could reasonably be considered outrageous. The Plaintiff has stated a claim for outrage that is sufficiently plausible on its face and Defendants' motion to dismiss Count XI should be denied.

### *M. Jason Redden in his Capacity as a Deputy Sheriff*

Next, the Defendants argue that the Plaintiff has failed to plead any claim whatsoever against Defendant Redden as a deputy sheriff with the Raleigh County Sheriff's Department. The Defendants argue that all of the acts alleged in the Plaintiff's complaint occurred while Defendant Redden was a parole officer, and that the matter should be dismissed against him in his individual capacity as a deputy sheriff.

The Plaintiff argues that, although Defendant Redden was still employed as a parole officer at the time of his arrest, shortly thereafter he was hired as a deputy sheriff for the Raleigh County Sheriff's Department. The Plaintiff contends that, as a deputy sheriff, Defendant Redden

continued to take part in the malicious conduct against the Plaintiff, such as continued coordination of sworn statements and testimony with the other Defendants and testimony against the Plaintiff at pre-trial hearings and during trial. Thus, the Plaintiff argues that Defendant Redden's conduct continued through his employment with the Raleigh County Sheriff's Department. Further, the Court understands the Plaintiff to argue that Defendant Redden should not be dismissed in his individual capacity for acts committed while he was employed as a deputy sheriff.

In Section C above, the Court found that the claims against Defendant Redden in his capacity as a deputy with the Raleigh County Sheriff's Department should be dismissed. The parties are in agreement that the claims in Redden's capacity as a deputy should be dismissed. As the Plaintiff points out, he alleged in his complaint that "shortly after Plaintiff's arrest [Defendant Redden] became an officer with the Raleigh County Sheriff's Department." (Amend. Complaint at ¶ 179.) The Plaintiff has also alleged throughout his complaint that, after being employed with the Raleigh County Sheriff's Department, Defendant Redden continued to take part with the other officers in the wrongful conduct perpetuated against the Plaintiff. Mr. Ali alleges that Defendant Redden continued to conspire and coordinate with the other Defendant officers concerning sworn statements and testimony, and that he testified against the Plaintiff at pre-trial hearings and during his criminal trials. Given these allegations and the Court having previously found that the Defendants' motion, as it relates to Defendant Redden's capacity as a deputy sheriff, should be granted, the Court finds that the motion to dismiss the claims against Defendant Redden in his individual capacity during the period in which he was employed by the Raleigh County Sheriff's Department should be denied.

*N. First and Sixth Amendments*

Lastly, the Defendants argue that the Plaintiff's claims for violations of the First and Sixth Amendments should be dismissed. The Defendants assert that the Plaintiff has failed to plead any facts or allegations in support of First or Sixth Amendment violations. The Plaintiff counters that he has alleged both a violation of his First Amendment right to be free from police action motivated by retaliatory animus and his Sixth Amendment right to a speedy trial, and that these claims should proceed.

In Count V of his amended complaint, the Plaintiff alleges a conspiracy to interfere with his constitutional rights in violation of 42 U.S.C. § 1985(3), including his First Amendment right to free speech and his Sixth Amendment right to a speedy criminal trial. As the Court has previously found, the Plaintiff has stated sufficient allegations to meet the conspiracy elements of a Section 1985(3) action. Thus, to the extent that the allegations of First and Sixth Amendment violations pertain to the Plaintiff's claim under Section 1985(3), the claims should proceed. The Plaintiff has also alleged constitutional violations pursuant to 42 U.S.C. § 1983. Based on the allegations set forth in support of the Section 1983 claims alleged in Counts IV and VII, however, the Plaintiff alleges violations of his Fourth Amendment search and seizure rights as opposed to his First and Sixth Amendment rights. Because the Plaintiff has not specifically alleged Section 1983 claims based on First and Sixth Amendment violations, the Court finds there are no claims to be dismissed. The Plaintiff's Section 1983 claims should proceed against Defendants Epling and Redden, as the Court has previously found, and the Defendants motion to dismiss should be denied.

The Court has reviewed the *Plaintiff's Motion for Leave to Exceed Page Limit* (Document 18). The Plaintiff moves to extend the established twenty (20) page limit in his response in opposition to Defendants Gary Epling and Jason Redden's motion to dismiss Plaintiff's complaint. The Plaintiff seeks to file a response of thirty-five (35) pages in length. After careful consideration, the Court **ORDERS** that the motion be **GRANTED.** The Court has also reviewed *Defendants Gary Epling and Jason Redden's Motion for Leave to Exceed the Page Limitations* (Document 10). These Defendants move to extend the established twenty (20) page limit by ten (10) pages. After careful consideration, the Court **ORDERS** that the motion be **GRANTED.**

## CONCLUSION

WHEREFORE, after careful consideration, the Court **ORDERS** that the *Defendants Gary Epling and Jason Redden's Motion to Dismiss the Plaintiff's Complaint* (Document 9) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **ORDERS** that all of the claims against Defendants Epling and Redden in their official capacities as officers of the Raleigh County Sheriff's Department be **DISMISSED**. The Court **ORDERS** that the motion be **GRANTED** as to Count III and Count X, and that those counts be **DISMISSED**. Otherwise, the Court **ORDERS** that the motion be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.　　　　　　　　　ENTER:　　　March 29, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

31