**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

MARQUEL ALI,

                Plaintiff,

v.                                    **CIVIL ACTION NO.  5:17-cv-03386**

RALEIGH COUNTY, et al.

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants City of Beckley, Beckley Police Department, and David Snuffer's Motion to Dismiss Plaintiff's Amended Complaint in Lieu of an Answer* (Document 13) and *Memorandum of Law in Support* (Document 14), the *Plaintiff's Response in Opposition* (Document 26), and the *Defendants, City of Beckley, Beckley Police Department, and David Snuffer's Reply to Plaintiff's Response in Opposition* (Document 30).   The Court has also reviewed the Plaintiff's *Complaint* (Document 1), *Amended Complaint* (Document 23), and all attached exhibits.   For the reasons stated herein, the Court finds that the motions should be granted in part and denied in part, as more fully explained herein.

**FACTUAL ALLEGATIONS**

The Plaintiff, Marquel Ali, initiated this action with a complaint filed in this Court on June 23, 2017.   The Plaintiff originally named the following entities as Defendants: Raleigh County, a municipal corporation organized under the laws of the State of West Virginia, Raleigh County Sheriff's Department (Sheriff's Department), a law enforcement agency established, maintained,

and controlled by Raleigh County, the City of Beckley, a municipal corporation organized under the laws of the State of West Virginia, Beckley Police Department (BPD), a law enforcement agency established, maintained, and controlled by the City of Beckley, and the West Virginia State Police (WVSP), a state law enforcement agency organized under the laws of the State of West Virginia. Mr. Ali also named several individuals as Defendants, in both their individual and official capacities: Mr. Steven Tanner, a resident of Raleigh County, West Virginia, and the Sheriff of Raleigh County during the applicable time frame, Mr. Gary Epling, a resident of Raleigh County, West Virginia, and a detective with the Raleigh County Sheriff's Department, Mr. Kenneth Pack, a resident of Raleigh County, West Virginia, and an officer with the WVSP, Mr. David Snuffer, a resident of Raleigh County, West Virginia, and an officer with the BPD, and Mr. Jason Redden, a citizen of Raleigh County, West Virginia, and, during the applicable time, a parole officer with the West Virginia Department of Corrections.[1] (Amended Compl. at ¶¶ 2-13.)[2] The Plaintiff alleges that "all acts of the Defendants were done . . . under the color and pretense of [the law] of the State of West Virginia and under the authority of the office" by which they were employed. (*Id.* at ¶ 14.)

Mr. Ali, "an African American male with a dark complexion," was hired by the Defendant Raleigh County Sheriff's Department as a deputy and began his employment on March 18, 2014.

1 Subsequent to the time period in which most of the Plaintiff's allegations took place, Mr. Redden became a deputy with the Defendant Raleigh County Sheriff's Department. The Plaintiff does not specifically allege when Mr. Redden became a deputy sheriff.

2 On June 7, 2017, Mr. Ali filed a *Motion for Leave to File Amended Complaint* (Document 4). While that motion was pending, the parties proceeded to brief the pending motions to dismiss. While those motions were being fully briefed, this Court issued its *Order* (Document 22) granting the motion and ordering the Plaintiff's amended complaint to be filed. After the granting of this motion, the Defendants proceeded to fully brief their motions to dismiss the original complaint. Because arguments presented by the parties in the motions to dismiss were not substantively altered by the filing of the amended complaint, the Court applies those arguments to the Plaintiff's amended complaint.

(*Id.* at ¶ 1, 17.)   The Sheriff's Department requires all new hires to complete a probationary year during which they receive on-the-job training and attend the West Virginia State Police Academy. According to the Plaintiff, four other new deputies were hired at the same time as him, and one of them was also an African American.   The other African American had a "very light complexion," as alleged by Mr. Ali.   (*Id.* at ¶ 19.)   Mr. Ali alleges that he was, in fact, "the only African American officer employed with the Defendant Sheriff's Department who had a dark complexion." (*Id.* at ¶ 21.)

Mr. Ali alleges that, throughout his employment with the Defendant Sheriff's Department, he was frequently subjected to racial slurs and other inappropriate treatment.   Defendant Tanner would often call him "boy" or refer to him as a "thug," other white officers would place bets on whether he would make it through his training at the police academy, and he would often receive write-ups while white officers "who engaged in the same activity were not issued any form of reprimand or other discipline."   (*Id.* at ¶ 23-28.)   On March 16, 2015, Mr. Ali was subjected to an interrogation regarding allegations by someone he had arrested.   A white officer was present with Mr. Ali when he made the arrest, but was not subjected to the same interrogation and investigation.   On the following day, "one day prior to the end of his one year probationary period," Mr. Ali was terminated from his employment by Defendant Tanner.   (*Id.* at ¶ 38.)   Mr. Ali appealed his termination to the Raleigh County Civil Service Commission, and attended a hearing on June 2, 2015.   The parties were required to submit proposed findings of fact and conclusions of law to the Commission by June 22, 2015.

On June 23, 2015, one day after the submission of those findings of fact, the Plaintiff's cousin contacted him and asked for a ride.   The Plaintiff's cousin was on parole at the time and

owned no vehicle, so the Plaintiff agreed to pick him up.   Prior to picking up his cousin, Mr. Ali received a phone call from a State Trooper regarding a case he had worked on while a deputy. The trooper asked the Plaintiff if he was currently in Beckley.   Mr. Ali stated that he was in Beckley, and proceeded to pick up his cousin some twenty minutes later.   While in route to do so, "[a]pproximately one-half mile from the residence . . . Plaintiff noticed several unmarked police cars parked in a car wash parking lot."   (*Id.* at ¶ 53.)   Mr. Ali proceeded to his cousin's house where, after waiting several minutes, his cousin placed a bag in the trunk and got in the car.   The two decided to go to Burger King, and when exiting the drive through with their food, the Plaintiff's car was "barricaded in by several unmarked police cars, including the cars Mr. Ali had seen near the residence when he picked up his cousin."   (*Id.* at ¶ 61.)   "The officers who were involved in the traffic stop knew Mr. Ali and the vehicle he drove," and also "knew that [Mr. Ali] owned a personal firearm . . . ."   (*Id.* at ¶ 62.)

One of the officers approached Mr. Ali at gunpoint and asked him if he had a firearm. Although Mr. Ali responded that he did not have a firearm in the car, he was forced to the ground and handcuffed.   After the Defendant officers had begun searching his car, Mr. Ali was asked to sign a consent form, and signed it, although it "had been previously completed by Defendants and/or agents of Defendants and was also incorrectly dated '6-22-2015.'"   (*Id.* at ¶ 70.)   After signing the form, the Plaintiff saw Defendant Epling "approach the back of the car carrying a mid-to-large sized brown or manila color envelope/package."   (*Id.* at ¶ 73.)   Upon completing the search of the vehicle, the Defendants allegedly found illegal drugs in the trunk and a small amount of marijuana on the Plaintiff's cousin.   Both the Plaintiff and his cousin were arrested.   The Plaintiff was charged with two counts of possession of a controlled substance with intent to deliver

and conspiracy to commit a felony. "After Mr. Ali was arrested, the State Trooper who had called [him] less than an hour earlier to confirm [he] was in Beckley, arrived at the scene and transported Mr. Ali to the Beckley State Police office, then to jail." (*Id.* at ¶ 80.) According to Mr. Ali, the Defendants conspired together to wrongfully and maliciously arrest and prosecute him in retaliation for his intent to bring a discrimination lawsuit against Defendant Raleigh County Sheriff's Department and Defendant Tanner.

The Defendants interrogated Mr. Ali and his cousin and conducted a criminal investigation of the charges, during which time the Defendants proactively "took steps to hide [] exculpatory evidence from Mr. Ali for nearly two years." (*Id.* at ¶ 100.) "Over the nearly two years following Mr. Ali's arrest, Defendants failed and/or refused to disclose or produce material evidence related to Mr. Ali's case despite repeated requests by Mr. Ali's counsel." (*Id.* at ¶ 103.) The Defendants also made various false claims regarding why they pulled the Plaintiff over in the Burger King parking lot. On February 13, 2017, Mr. Ali's first criminal trial began in the Circuit Court of Raleigh County, West Virginia. On February 15, after being informed that certain individuals in court had been seen speaking with potential defense witnesses in the hallway, the court declared a mistrial *sua sponte*. On May 22, 2017, a second criminal trial began on the same charges. On May 26, 2017, after a four-day trial, the jury returned a defense verdict, finding Mr. Ali not guilty on all charges. Not quite three months later, Mr. Ali filed this action.

Mr. Ali's amended complaint sets forth eleven counts: Count I - Race Discrimination, Count II - Color Discrimination,[3] Count III - Discrimination and Interference with Plaintiff's Right to Equal Benefit of the Law in Violation of 42 U.S.C. § 1981, Count IV - Warrantless Arrest

---

3 The Plaintiff asserts the first two causes of action only against the Raleigh County Sheriff's Department and Defendant Tanner.

Pursuant to False Tip in Violation of 42 U.S.C. § 1983, Count V - Conspiracy to Interfere with Constitutional Rights in Violation of 42 U.S.C. § 1985(3), Count VI - Neglect to Prevent Conspiracy to Interfere with Plaintiff's Rights, Count VII - False/Wrongful Arrest and Improper Investigation and Prosecution in Violation of 42 U.S.C. § 1983, Count VIII - Abuse of Process, Count IX - Malicious Prosecution, Count X - Negligent Infliction of Emotional Distress, and Count XI - Outrage.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id.* Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E.*

*Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Defendants City of Beckley, BPD, and David Snuffer move for dismissal of the Plaintiff's amended complaint on several grounds.

### A. Stand-Alone Entities

Initially, Defendants argue that the BPD is not a legal entity separate from the City of Beckley capable of being sued. The Defendants rely on West Virginia Code § 29-12A-3(b) and its definitions of "municipality" and "political subdivisions." The Defendants argue that this

statute makes the BPD an instrumentality of the city and therefore not an entity capable of being sued. The Plaintiff counters that the Defendants ask this Court to broaden its ruling in *Webb v. Raleigh Cty. Sheriff's Dep't*, No. 5:09-CV-01253, 2010 WL 3702648 (S.D.W. Va. Sept. 16, 2010). The Plaintiff further argues that the Court's ruling in Webb examined the West Virginia Governmental Tort Claims and Insurance Reform Act (WVGTCIRA), which provides some immunities from suit for various state agencies. The Plaintiff asserts that the WVGTCIRA provides no authority for what is and is not a subdivision capable of being sued, and asks that the Court deny the Defendant's motion.

The Court finds that the BPD is not a separate entity capable of being sued. The BPD "exist[s] only to serve the City of Beckley and [is], therefore, [an] instrumentality or extension of the [City of Beckley.]" *See, Polk v. Town of Sophia*, No. 5:13-CV-14224, 2013 WL 6195727, at *4 (S.D.W. Va. Nov. 27, 2013); *see also Tofi v. Napier*, No. 2:10-CV-01121, 2011 WL 3862118, at *4 (S.D.W. Va. Aug. 31, 2011) (Johnston, J.). The motion to dismiss all claims against the BPD should be granted.

### B. Immunity from Intentional Tort Claims

Defendant City of Beckley moves for dismissal of the Plaintiff's intentional tort claims. Beckley argues that West Virginia Code § 29-12A-4 provides for liability on behalf of a municipality or political subdivision for the negligent acts of its employees, but that municipalities are not liable for the intentional acts of their employees. Specifically, the Defendants argue that the Plaintiff's claims for false imprisonment, false arrest, malicious prosecution, and abuse of process as pled in Counts IV, V, VI, VIII, IX, X, and XI all involve intentional acts of the individual, and that the City of Beckley cannot be liable for them.

The Plaintiff counters that the legislature did not intend to provide immunity to municipalities for the intentional acts of employees when those acts "involve misrepresentations such as those Mr. Ali alleges against these Defendants." (Pl.'s Resp. in Opposition at 8.) Mr. Ali alleges that he has clearly pled that Defendant Tanner made false accusations against him that resulted in his criminal prosecution, and that his negligence and intentional acts support a plausible claim against the City.

West Virginia Code § 29-12A-4(c)(2) states that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." However, political subdivisions are not liable for "intentional malfeasance on the part of their employees." *Poe v. Town of Gilbert, W. Va.*, No. 2:11-CV-00645, 2012 WL 3853200, at *8 (S.D.W. Va. Sept. 5, 2012) (Johnston, J.) (citing *Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 533-34 (1996)); *Polk v. Town of Sophia*, No. 5:13-CV-14224, 2013 WL 6195727, at *7 (S.D.W. Va. Nov. 27, 2013).

Here, the Plaintiff argues that Defendant Tanner's misrepresentations should support the City of Beckley's liability. However, Defendant Tanner was not employed by the City of Beckley or the BPD. He was the Sheriff of Raleigh County at the time of the Plaintiff's arrest. His statements have no bearing on the determination of whether the City of Beckley can be held liable for the alleged intentional acts of its employee, Defendant Snuffer. Further, the Plaintiff's claims in Counts VIII, IX, X, and XI are state tort claims brought based on allegations of intentional acts by the Defendant law enforcement officers. Count VIII alleges abuse of process, Count IX alleges malicious prosecution, Count X alleges negligent infliction of emotional distress, and Count XI alleges outrage. Inasmuch as the City of Beckley is a municipality, it cannot be sued for the

intentional acts of its Defendant officer. Counts VIII, IX, X, and XI should be dismissed as to the City of Beckley. However, because the Plaintiff alleges that Defendant Snuffer in his individual capacity also took part in intentional misconduct and has personal liability for intentional torts, the motion to dismiss these claims against him should be denied. Further, Counts IV, V, VI, and VII are not brought under state law tort theories, but are federal law claims pursuant to 42 U.S.C. Sections 1981, 1983, and 1985, and will be discussed herein.

### C. 42 U.S.C. § 1983 Claims Against the City of Beckley

The Defendants move for dismissal of all of the pending claims against the City of Beckley brought pursuant to 42 U.S.C. § 1983. The Defendants argue that a local government may only be sued under Section 1983 when the plaintiff alleges that the execution of a government custom or policy causes the alleged injury. The Defendants contend that the Plaintiff has failed to allege that a City of Beckley custom or policy motivated or caused the allegations in the amended complaint.

The Plaintiff argues that a single instance of a constitutional violation supports a claim under Section 1983, and that he has sufficiently alleged a governmental policy that led to his injuries. He argues that his complaint clearly provides allegations of acts by Defendant Tanner and the other law enforcement officers that, although only occurred once, constitute sufficient conduct to satisfy a single decision by a municipal policymaker such that the City of Beckley as a municipality should be held liable.

42 U.S.C. § 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

10

> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress.

A local government cannot be sued under 42 U.S.C. § 1983 for injuries caused by its employees or agents unless it is the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" that causes the injury. *Monell*, 436 U.S. at 694.

Further, "[i]n a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. *See also Iqbal*, 556 U.S. at 693, (Souter, J., dissenting) (stating that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely.")

The Court finds that the Plaintiff has failed to sufficiently plead a policy or custom such that the City of Beckley can be held liable under Section 1983. The Plaintiff alleges that the individual Defendant law enforcement officers conspired together to violate his constitutional rights on one occasion. Further, throughout both his amended complaint and his response in opposition to this motion, the Plaintiff has argued that it was Defendant Tanner, the Sheriff of Raleigh County, who instituted the alleged conspiracy to violate the Plaintiff's rights. An allegation of one incident of unconstitutional activity is not sufficient to impose municipal liability, particularly when initiated by a Defendant not employed by the City of Beckley. The Plaintiff's claims pursuant to 42 U.S.C. § 1983 should be dismissed against the City of Beckley.

### D. Punitive Damages

The City of Beckley and Defendant Snuffer argue that the claims against them for punitive damages should be dismissed because West Virginia Code Section 29-12A-17 prohibits an award of punitive damages against a municipality or political subdivision. The Plaintiff concedes that West Virginia law does, in fact, prohibit an award of punitive damages against a municipality. The Defendants' motion to dismiss the claims for punitive damages should be granted as to Defendant City of Beckley.

### E. Defendant Snuffer in his Official Capacity

These Defendants also seek dismissal of the claims against Defendant Snuffer in his official capacity. The Defendants argue that claims against Defendant Snuffer in his official capacity as an officer with the BPD cannot proceed because they are merely suits against the entity. The Plaintiff concedes the same in his response and argues that, although the claims may continue against Defendant Tanner in his individual capacity, the claims against him in his official capacity should be dismissed pursuant to *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). The Court finds that the claims against Defendant Snuffer in his official capacity as Sheriff of Raleigh County should be dismissed.

### F. 42 U.S.C. § 1981 Claims

The Beckley Defendants request dismissal of the Plaintiff's claims in Count III brought pursuant to 42 U.S.C. § 1981. The Defendants argue that the Plaintiff's claim for discrimination and interference with his rights to equal benefits under the law should have been brought pursuant to 42 U.S.C. § 1983 as opposed to 42 U.S.C. § 1981. The Defendants base their argument on the United States Supreme Court holding in *Jett v. Dallas Independent School District* that Section

12

1983 is the exclusive remedy for a claim against a state actor accused of violating rights secured under Section 1981. The Plaintiff disagrees. He argues that the holding in *Jett* is inappropriate given the 1991 amendments to the Civil Rights Act, and asks this Court to disregard both the holding in *Jett* and the Fourth Circuit's affirmation of it to find that the Plaintiff can plead a claim for discrimination under Section 1981 against state actors in their individual capacities.

In *Jett*, the Supreme Court found that Section 1983 of the Civil Rights Act provides the only remedy for violations of the rights guaranteed in Section 1981 of the same Act. *See*, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). The Fourth Circuit affirmed this ruling in *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). There, the Fourth Circuit held that discrimination claims against state actors, specifically a county government in that case, must be brought under Section 1983, as that "is the 'exclusive remedy for violation of the rights guaranteed in § 1981.'" *Id.* (quoting *Jett*, 491 U.S. at 733). The *Dennis* court specifically explained in its finding that it "[did] not believe that this aspect of *Jett* was affected by the Civil Rights Act of 1991 . . . We think the correct reading of the amendment . . . recognizes that [the addition of] subsection (c) [to § 1981] did not purport to overrule *Jett's* holding with respect to municipal liability . . . ." *Dennis*, 55 F.3d at 56; *see also*, *Toomer-Frazier v. Columbia, City of*, 680 F. App'x 244, 245 (4th Cir. 2017).

The Plaintiff argues that the Court should disregard the holdings of *Jett* and *Dennis*. In reliance on *Stout v. Reuschling*, a case from the United States District Court for the District of Maryland, the Plaintiff argues that *Jett* and *Dennis* merely stand for the proposition that Section 1981 claims cannot be asserted as independent causes of action against a state or municipal entity only. *See*, *Stout v. Reuschling*, No. CIV.A. TDC-14-1555, 2015 WL 1461366, at *7 (D. Md. Mar.

27, 2015).

The Court is not persuaded by the ruling in *Stout*. While the *Stout* court's analysis is based on the 1991 amendments to the Civil Rights Act, the Fourth Circuit specifically explained in *Dennis* that it did not believe those amendments altered the Supreme Court's holding in *Jett*. Given the rulings of the Supreme Court and the Fourth Circuit, the Court finds that Section 1981 does not provide an independent cause of action. The Plaintiff's claims in Count III should be dismissed.

### G.  Conspiracy to Interfere Pursuant to 42 U.S.C. § 1985(3)

The Defendants argue that the Plaintiff has failed to properly plead a claim against them for conspiracy to interfere with constitutional rights in violation of 42 U.S.C. § 1985(3) in Count V of the amended complaint. The Defendants argue that Mr. Ali has failed to allege with any specificity which of the Defendants agreed to the conspiracy, any specific racial animus or racial bias, or any racially motivated acts. Thus, the Defendants argue that the Section 1985(3) claim in Count V should be dismissed.

The Plaintiff argues that he has appropriately pled a conspiracy between two or more people by alleging that Defendants were motivated by specific class-based, discriminatory animus against him in retaliation based on his challenge of his termination and his intent to sue the Defendants for racial discrimination. He has further pled that Defendant Snuffer and others deprived him of the equal enjoyment of rights under the law and caused him injuries by their overt acts. Mr. Ali claims he has sufficiently pled a plausible claim for conspiracy to violate his civil rights.

Section 1985(3) provides:

> If two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]…[I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).   This cause of action is directed at those who conspire to deprive protected classes of people of their rights. *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985).   The federal remedy, construed broadly, is for "conspiracies involving invidious animus toward a class of persons" who are not adequately protected by the state. *Id.* at 1258 (internal quotation marks omitted).   The elements of proof for a § 1985(3) cause of action are: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing *Buschi*, 775 F.2d at 1257).

The Court finds that the Plaintiff has sufficiently alleged facts to state a claim for conspiracy under 1985(3).   First, the Plaintiff has stated sufficient allegations to meet the conspiracy elements. He alleges that the Defendants Redden, Pack, Epling, and Snuffer met together to falsely create the probable cause necessary to arrest the Plaintiff and to coordinate testimony to deprive the Plaintiff of equal enjoyment of his lawful rights in a manner that resulted in his injury as a consequence of an overt act.   The Plaintiff also satisfies the discriminatory animus element because he alleges that the Defendants committed these actions at the behest of

Defendant Tanner, who was acting with discriminatory animus relating to the Plaintiff's race and his intent to sue Defendant Tanner and Raleigh County in a discrimination lawsuit.

Assuming these allegations to be true, the Plaintiff has sufficiently stated a plausible claim for relief pursuant to 42 U.S.C. § 1985(3). The Defendants' motion to dismiss Count V should be denied.

### H. Neglect to Prevent Conspiracy

The Defendants also seek dismissal of Plaintiff's claim in Count VI for neglect to prevent a conspiracy to interfere with the Plaintiff's rights. The Defendants argue that the Plaintiff failed to bring this claim within the one-year statute of limitations. According to the Defendant, the statute of limitations on the Plaintiff's claim began to accrue on June 23, 2015, the day he was arrested, resulting in the expiration of the statute of limitations on June 23, 2016. The Plaintiff did not bring the suit until June 23, 2017, however, and the Defendants argue that this claim should be dismissed.

The Plaintiff counters that, although the statute of limitations is indeed one year on this claim, the limitations period begins to accrue from the last act that caused the plaintiff an injury. The Plaintiff argues that the last act causing him injury was his second criminal trial, which ended in his acquittal on May 26, 2017. Thus, the Plaintiff contends that the statute of limitations period did not expire until May 26, 2018.

Although not specifically stated in his amended complaint, the Plaintiff brings the claim in Count VI pursuant to 42 U.S.C. § 1986, which states, in pertinent part, that

> [e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do,

> if such wrongful act be committed, shall be liable to the party injured
> . . . for all damages caused by such wrongful act . . . .

Further, in order to maintain a cause of action under Section 1986, a plaintiff must have sufficiently set forth a cause of action under Section 1985, because Section 1986 "merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985." *Sellner v. Panagoulis*, 565 F. Supp. 238, 249 (D. Md. 1982), *aff'd,* 796 F.2d 474 (4th Cir. 1986).

The Court finds that the Plaintiff has pled sufficient facts to support a claim under Section 1986. Section 1986 specifically states that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." The Plaintiff alleges that he was arrested on June 23, 2015, and that the Defendants conspired together to find unlawful and improper probable cause to arrest him. However, the Plaintiff also alleges that the Defendants continued to conspire against him by coordinating their testimony in the time leading up to the trial, giving false testimony during pre-trial hearings and trial, and by talking to witnesses in a manner that caused the first trial to end in a mistrial. Accepting these allegations as true, it is clear that the Defendants continued to conspire against the Plaintiff at least up until the time of his second trial, which began in May of 2017. Given these allegations, the statute of limitations began to accrue in May of 2017. Because the Plaintiff brought his claim under 42 U.S.C. § 1986 by June 23, 2017, the claim in Count VI is not barred by the applicable statute of limitations.

## I. *Warrantless/False Arrest Claims*

The Beckley Defendants argue that the Plaintiff's claims for warrantless/false arrest alleged in Counts IV (warrantless arrest pursuant to a false tip) and VII (false/wrongful arrest and improper investigation and prosecution). The Defendants argue that, pursuant to *Wilt v. State Auto Mutual*

*Insurance*, these two counts contain tort actions which have a one-year statute of limitations based on West Virginia Code §§ 55-2-12(c) and 55-7-8(a). See *Wilt v. State Auto. Mut. Ins. Co.*, 506 S.E.2d 608 (W.Va. 1998). Because the Plaintiff did not bring these claims within one year of his arrest on June 23, 2015, the Defendants argue that these claims should be dismissed. The Plaintiff counters that *Wilt* does not apply here because he brings the claims in Counts IV and VII pursuant to 42 U.S.C. § 1983, and that a two-year statute of limitations applies to Section 1983 claims. The Plaintiff contends that the West Virginia Supreme Court's decision in *Wilt* did not address Section 1983 claims and is therefore not controlling.

The Court finds the Defendants' reliance on *Wilt* to be misplaced. In *Wilt*, the West Virginia Supreme Court addressed a certified question from the United States District Court for the Northern District of West Virginia concerning the statute of limitations that applies to claims brought under the West Virginia Unfair Trade Practices Act. *Wilt*, 506 S.E.2d at 609. As Mr. Ali correctly states, he brought the claims in Counts IV and VII pursuant to 42 U.S.C. § 1983. While Section 1983 itself has no federally-provided statute of limitations, "in accordance with West Virginia Code § 55-2-12(b), the applicable statute of limitations for [Section] 1983 actions is two years." *Morales v. Robinson*, No. CIV A 205-0509, 2007 WL 1074836, at *4 (S.D.W. Va. Apr. 6, 2007) (Copenhaver, J.) (citing *Bell ex rel. Bell v. Bd. of Educ. of Cty. of Fayette*, 290 F. Supp. 2d 701, 709 (S.D.W. Va. 2003)). Thus, even if the statute of limitations began to accrue when the Plaintiff was arrested on June 23, 2015, a position this Court has previously found to be without merit, the Plaintiff would have had until June 23, 2017, to file his action. Because the Plaintiff filed suit on June 23, 2017, his claims in Counts IV and VII are not time-barred. The Defendants' motion to dismiss Counts IV and VII against the individual Beckley Defendant,

Snuffer, should be denied, but granted against the City of Beckley inasmuch as there is no supervisory liability under Section 1983.

### J.   Defendant Snuffer's Immunity Under W.Va. Code § 29-12A-5(b)

The Beckley Defendants argue that Defendant Snuffer is entitled to immunity from the Plaintiff's claims pursuant to West Virginia Code § 29-12A-5(b).   Defendant Snuffer asserts that the statutory language in Section 29-12A-5(b) absolves him from liability for actions done in the scope of his employment as an employee of a municipality or political subdivision, and that all of the actions the Plaintiff alleges were done within the scope of Defendant Snuffer's employment. Thus, he argues that the Plaintiff's claims against him in his individual capacity should be dismissed.   The Plaintiff counters that he has clearly alleged Defendant Snuffer acted willfully and maliciously, and that he is not immune from suit.

West Virginia Code § 29-12A-5(b) states that

> [a]n employee of a political subdivision is immune from liability
> unless . . . (1) [h]is or her acts or omissions were manifestly outside
> the scope of employment or official responsibilities; (2) [h]is or her
> acts or omissions were with malicious purpose, in bad faith, or in a
> wanton or reckless manner; or (3) liability is expressly imposed
> upon the employee by a provision of this code.

The Court finds that the Plaintiff has alleged sufficient facts such that Defendant Snuffer is not entitled to immunity at this stage of litigation.   The Plaintiff alleges that Defendant Snuffer maliciously acted in concert with the other Defendants to improperly stop him, arrest him, deprive him of evidence essential to his case, and take part in his malicious prosecution.   Assuming the allegations described by the Plaintiff in his amended complaint to be true, Defendant Snuffer's actions were done with a malicious purpose and in bad faith, and he is not entitled to immunity.

Thus, Defendant Snuffer's motion to dismiss the Plaintiff's claims based on West Virginia Code § 29-12A-5(b) should be denied.

### K.  Malicious Prosecution

The Beckley Defendants request dismissal of the Plaintiff's claim of malicious prosecution alleged in Count IX.   The Defendants argue that the elements of malicious prosecution under West Virginia law require that the Plaintiff prove procurement, and that the Plaintiff has not sufficiently alleged that Defendant Snuffer or the City of Beckley procured his prosecution.   The Plaintiff counters that he has sufficiently alleged facts against Defendant Snuffer such that his claim for malicious prosecution should proceed.

According to the West Virginia Supreme Court,

> [i]n an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious.   If plaintiff fails to prove any of these, he can not recover.

Syl. Pt. 3, *Hines v. Hills Dep't Stores, Inc.*, 454 S.E.2d 385, 387 (W.Va. 1994).   In a separate line of cases, the West Virginia Supreme Court held that the requisite elements for a malicious prosecution were only three, and included "(1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff."   Syl. Pt. 1, *Preiser*, 352 S.E.2d at 22.   However, in examining these two different delineations of the malicious prosecution elements, the same court held that they were the same, and that "procurement [of the prosecution by the defendant] is an inherent element in both."   *Norfolk S. Ry. Co. v. Higginbotham*, 721 S.E.2d 541, 546 (W.Va. 2011).   Further, "the meaning of procurement is not that the defendants jointly applied to the justice of the peace to issue the warrant

against the plaintiff, but that they *consulted* and *advised together*, and both participated in the prosecution, which was carried on under their countenance and approval." *Id.* (emphasis added).

The Plaintiff has sufficiently pled facts to satisfy the elements of a malicious prosecution claim. Mr. Ali alleges that Defendant Snuffer conspired with the other Defendant officers to improperly arrest him and to coordinate statements and testimony to secure a conviction against him. Specifically with respect to the procurement, the Plaintiff has alleged that Defendant Snuffer consulted with and conspired together with the other Defendants to ensure their testimony was consistent during the Plaintiff's prosecution, and that Defendant Snuffer testified during the Plaintiff's criminal trial. The Plaintiff further alleges that this was done with malice in response to Mr. Ali's intention to file suit against the Raleigh County Defendants for racial animus and discrimination, and that the prosecution by the Defendants terminated in Mr. Ali's favor when the jury found him not guilty of the crimes charged by the Defendants. Viewing these allegations in the light most favorable to the Plaintiff, the Court finds that Mr. Ali has sufficiently pled a claim of malicious prosecution in Count IX, plausible on its face such that Defendant Snuffer's motion to dismiss should be denied.

### L. Abuse of Process

The Beckley Defendants move for dismissal of the Plaintiff's abuse of process claim brought in Count VIII. The Defendants argue that the Plaintiff has alleged no specific facts regarding how Defendant Snuffer unlawfully arrested, detained, or prosecuted the Plaintiff. The Beckley Defendants also argue that the Plaintiff's abuse of process claim is barred by the statute of limitations, because it must have been brought within one year of his arrest on June 23, 2015.

The Plaintiff responds that he has sufficiently alleged the necessary facts to maintain an abuse of process claim against the Defendants. He contends he has sufficiently pled that Defendant Snuffer conspired with the other Defendants and took the actions necessary to allow the other Defendants to arrest him. He alleges Defendant Snuffer's testimony specifically contributed to the indictment brought against the Plaintiff that formed the basis of his prosecution. The Plaintiff further argues that his abuse of process claim was timely filed because the Defendants, including Defendant Snuffer, continued to abuse the legal process until his eventual acquittal on May 26, 2017, at which point the statute of limitations on his claim began to accrue.

"Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Preiser v. MacQueen*, 352 S.E.2d 22, 28 (W.Va. 1985). "To properly state a claim for abuse of process, a plaintiff must allege: first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." *Westfield Ins. Co. v. Mitchell*, No. 2:12-CV-00585, 2013 WL 4742832, at *4 (S.D.W. Va. Sept. 3, 2013) (internal citations omitted). According to the West Virginia Supreme Court, "[t]he authorities are practically unanimous in holding that to maintain the action [for abuse of process] there must be proof of a willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object—an intentional and willful perversion of it to the unlawful injury of another." *Preiser*, 352 S.E.2d at 28.

The Court finds that the Plaintiff has sufficiently pled the required elements of a cause of action for abuse of process. The Plaintiff alleges in his complaint that the Defendants, with Defendant Snuffer playing a critical part in his arrest, conspired together to purposefully use the

Plaintiff's cousin to provide the probable cause necessary to arrest him without a warrant and charge him with drug offenses, knowing that he was not actually involved in the trafficking of drugs. The Plaintiff further alleges that the Defendants arrested him in this improper manner in retaliation for the Plaintiff challenging his firing from the Raleigh County Sheriff's Department on racial discrimination grounds. Accepting these allegations as true, Mr. Ali has stated a plausible claim for relief in Count VIII.

Further, the Court finds that Mr. Ali's abuse of process claim is not barred by the statute of limitations. As the Defendants correctly point out, the statute of limitations on an abuse of process claim in West Virginia is one year, and that action must be brought within one year from the termination of the acts which constitute the abuse complained of. *Preiser*, 352 S.E.2d at 29. Here, the Plaintiff alleges that the Defendants not only committed an abuse of process when they wrongfully arrested the Plaintiff, but continued to do so as they conspired to coordinate their testimonies and failed to disclose exculpatory evidence to the Plaintiff. Thus, the alleged abuse of process continued well past the Plaintiff's arrest and was not terminated until the Plaintiff's acquittal in May of 2017. Given these allegations, the Plaintiff's abuse of process claim is not barred by the statute of limitations, and the Defendants' motion to dismiss Count VIII should be denied against Defendant Snuffer.

### M. Warrantless Arrest Pursuant to a False Tip

Defendant Snuffer seeks dismissal of the Plaintiff's claims brought in Count IV pursuant to 42 U.S.C. § 1983. Defendant Snuffer argues that the Plaintiff has failed to assert any factual allegations supporting the claim that Defendant Snuffer is liable for warrantless arrest because the Plaintiff has not alleged that Defendant Snuffer filed a criminal complaint against him, specifically

received a false tip, or filled out a police report. Defendant Snuffer argues that the Plaintiff improperly lumps all of the Defendants together in the form of labels and conclusions, and that Count IV should be dismissed. Of course, the Plaintiff argues that he has clearly alleged that Defendant Snuffer played an active role in the scheme to arrest him and was involved in the case both before and after his arrest such that his claim against Defendant Snuffer in Count IV should not be dismissed.

In support of his warrantless arrest claim, the Plaintiff asserts that Defendant Snuffer intentionally and maliciously worked with the other Defendant officers in waiting for Mr. Ali to be with Plaintiff's cousin in order to provide the Defendants with the pretextual probable cause necessary to search his car and eventually arrest him. The Plaintiff further alleges that the Defendants, including Defendant Snuffer, acted in part on information from the Plaintiff's aunt which the Defendants knew was false, and used this false information to remove him from his car at gunpoint, search his car, and arrest him. Mr. Ali alleges that Defendant Snuffer and the other Defendants took these actions solely based on this false tip and did not have a warrant. Assuming these allegations to be true and drawing all reasonable inferences in his favor, the Court finds that the Plaintiff has pled sufficient facts to state a claim against Defendant Snuffer for warrantless arrest under Section 1983. Defendant Snuffer's motion to dismiss this claim in Count IV should be denied.

### N. Negligent Infliction of Emotional Distress

The Beckley Defendants also seek dismissal of the Plaintiff's claim for negligent infliction of emotional distress contained in Count X. The Defendants argue that the Plaintiff has failed to sufficiently plead the elements for the claim. The Defendants assert that negligent infliction of

emotional distress must stem from the plaintiff being present at the scene of an event wherein the plaintiff witnesses the victim be injured. Because none of those facts are in play here, the Defendants argue that the claim in Count X should be dismissed.

The Plaintiff counters that the Defendants misstate the law on negligent infliction of emotional distress. According to the Plaintiff, such claims can also be brought when a plaintiff "shows facts sufficient to guarantee that the emotional damages claim is not spurious." (Pl.'s Mem. In Opposition at 23.) The Plaintiff contends that he has alleged such facts and his claim should proceed.

Generally speaking, negligent infliction of emotional distress claims involve "a plaintiff [who] experience[s] serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct." Syl. Pt. 1, *Heldreth v. Marrs*, 425 S.E.2d 157, 158 (W.Va. 1992). "A claim for negligent infliction of emotional distress is applicable only to limited situations premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety." *Douglas Holding Co. v. City of Princeton*, No. CV 1:14-14200, 2016 WL 6909120, at *5 (S.D.W. Va. Mar. 31, 2016) (Faber, J.) (internal citations omitted).

The Plaintiff has asserted no set of facts to support such a claim. Actually, he asserts that Defendants negligently caused him emotional distress due to acts directed at the Plaintiff. Further, the Plaintiff's reliance on *Rodriguez v. Consolidation Coal Company* is spurious at best, because the plaintiff/appellee in *Rodriguez* brought the action alleging retaliatory discharge and seeking damages for negligent infliction of emotional distress after he was discharged for causing an accident in which "one of [his] hourly subordinates was killed." *Rodriguez v. Consolidation*

*Coal Co.*, 524 S.E.2d 672, 676 (W.Va. 1999). The Plaintiff further references *Ricottilli v. Summersville Memorial Hosp.*, 425 S.E.2d 629 (W.Va. 1992). However, this case involved a special "exception to the rule that liability may not be predicated upon negligence where the damage is limited to mental or emotional disturbance without accompanying physical injury." *Id.* at 634. This exception, "often referred to as the 'dead body exception,' permits recovery for emotional damages upon proof of the negligent mishandling of a corpse." *Id.* Neither of these cases support the Plaintiff's alleged cause of action. The Beckley Defendants' motion to dismiss the claim in Count X should be granted.

### O. Outrage

The Beckley Defendants move for dismissal of the Plaintiff's claim of outrage alleged in Count XI. The Defendants argue that the Plaintiff fails to allege conduct that is so extreme and outrageous that it goes above and beyond conduct that was tortious or criminal in nature such that it satisfies the elements of the tort of outrage. The Plaintiff responds that Defendant Snuffer, along with the other Defendant officers, acted in a manner that was so extreme and outrageous that it went beyond the bounds of decency. The Plaintiff contends that Defendant Snuffer unnecessarily removed him from his car at gunpoint and played a critical part in a conspiracy that forced the Plaintiff to face two criminal trials. Had the Defendants' actions been effective to their fullest extent, the Plaintiff alleges he would have been subjected to several years in state prison for a crime that Mr. Snuffer and the other Defendants knew he did not commit. Thus, Mr. Ali claims the acts of Defendant Snuffer and the other actors were sufficiently outrageous and extreme to support a claim for the tort of outrage.

In West Virginia, the tort of outrage, or intentional infliction of emotional distress, follows the Restatement of Torts (Second): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982). The West Virginia Supreme Court has established the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998) (reaffirmed in *Hatfield v. Health Mgmt. Associates of W. Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008). The court further explained that "whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." Syl. pt. 4, *id.*

Courts have struggled to determine whether conduct may reasonably be considered outrageous. *Courtney v. Courtney*, 413 S.E.2d 418, 422 (W. Va. 1991) (reviewing several cases considering the question). Plaintiffs must make a showing that "the defendant's actions toward the plaintiff were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency" and be viewed as intolerable in a civilized society. *Travis*, 504 S.E.2d at 425. "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct. On the other hand, outrageous conduct can

include physical violence that causes bodily harm and emotional distress." *Courtney*, 413 S.E.2d at 423–424 (internal citations removed).

The Plaintiff has alleged that, by conspiring together with the other Defendant officers, Defendant Snuffer knowingly used false probable cause to arrest Mr. Ali without a warrant. Mr. Ali alleges that the Defendants, including Defendant Snuffer, did so in order to inflict emotional distress and scare him in retaliation for his intention to file a discrimination lawsuit against Defendants Tanner and the Raleigh County Sheriff's Department. The Plaintiff further alleges that the Defendants falsely arrested and accused him, hid evidence from him, and forced him to face trial two times, risking his facing several years in prison for crimes the Defendants knew he did not commit. Viewing these allegations in the light most favorable to the Plaintiff, the Court finds that the alleged conduct could reasonably be considered outrageous. The Defendants' motion to dismiss Count XI should be denied as to Defendant Snuffer.

### P. Qualified Immunity

Lastly, Defendant Snuffer argues that he is entitled to qualified immunity from the Plaintiff's claims brought pursuant to 42 U.S.C. § 1983. Defendant Snuffer argues that the Plaintiff has failed to properly plead that Defendant Snuffer's conduct was not reasonable under the circumstances, or that he violated a clearly established constitutional right. Defendant Snuffer asserts that he and the other Defendant officers had reasonable suspicion to believe the Plaintiff was involved in illegal activity such that the stop, search, and eventual arrest were reasonable under the circumstances.

The Plaintiff argues that he has sufficiently alleged "several violations of his constitutional rights" in the amended complaint. (Pl.'s Resp. in Opposition at 27.) He contends that he alleged

an improper arrest without a warrant based on knowingly manufactured probable cause, an improper investigation, and a conspiracy to doctor testimony and hide exculpatory evidence from him. Given these allegations, the Plaintiff claims he has alleged plausible facts sufficient to defeat a motion to dismiss on grounds of qualified immunity.

Under the qualified immunity doctrine, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Tomashek v. Raleigh Cty. Emergency Operating Ctr.*, No. 2:17-CV-01904, 2018 WL 522420, at *3 (S.D.W. Va. Jan. 23, 2018) (Goodwin, J.) (quoting *Maciariello v. Sumner*, 973 F.3d 295, 298 (4th Cir. 1992)). Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.)

Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32. Courts are advised to "ask first whether a constitutional violation occurred and second whether the right violated was clearly established."[4] *Id.* "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted); Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to

---

4 "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Smith v. Ray*, 781 F.3d 95, 106, fn 3 (4th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but . . . that in the light of pre-existing law the unlawfulness must be apparent."). The reasonableness analysis is objective. Courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident." *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994). "[T]he officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are." *Id.* at 173.

Viewing the allegations as true and drawing all reasonable inferences in the Plaintiff's favor, the Court finds that Defendant Snuffer is not entitled to qualified immunity. The Plaintiff asserts that Defendant Snuffer participated in a warrantless arrest pursuant to a false tip, a wrongful arrest and improper investigation, abuse of process, and malicious prosecution in violation of Section 1983. He alleges that the Defendants sought to maliciously arrest and prosecute him in retaliation for challenging his termination from employment with the civil service commission and because he intended to sue the Raleigh County Defendants regarding his termination. He alleges that his cousin was in the vehicle when the Defendants initiated the interaction in question. Plaintiff admits that his cousin was on parole, was being monitored by an ankle bracelet, and that at some point during the interaction the Defendants told him they were looking for his cousin in reference to a hold and commit order by his parole officer.

However, the Plaintiff also alleges that Defendant Snuffer and the other Defendant officers knowingly worked in conjunction with Defendant Redden to purposefully delay arresting the Plaintiff's cousin until he was with the Plaintiff, and that it was this delay that facilitated the

Defendants' probable cause to initiate the traffic stop of the Plaintiff. In other words, the Plaintiff alleges that Defendant Snuffer and the other Defendants worked with Defendant Redden to stop the Plaintiff when they knew they had no legitimate reasonable suspicion or probable cause to stop and eventually arrest him. Mr. Ali further implies that the Defendants potentially planted evidence in his car during the search. Accepting the allegations as true, the Plaintiff has sufficiently pled causes of action under Section 1983 for several constitutional violations. The requirement that law enforcement officers have probable cause before arresting a citizen is a clearly established right. While Defendant Snuffer may have had sufficient probable cause to arrest the Plaintiff's cousin, that probable cause did not extend to the Plaintiff without the unlawful scheme that the Plaintiff alleges here. Conspiring together to initiate this scheme against the Plaintiff in a malicious and retaliatory manner violates that clearly established constitutional right. Defendant Snuffer's defense of qualified immunity should be denied.

The Court has reviewed the *Plaintiff's Motion for Leave to Exceed Page Limit* (Document 25). The Plaintiff seeks to exceed the established twenty (20) page limit in his response in opposition to Defendants City of Beckley, Beckley Police Department, and David Snuffer's motion to dismiss Plaintiff's complaint. The Plaintiff seeks to file a response of thirty-one (31) pages in length. After careful consideration, the Court **ORDERS** that the motion be **GRANTED.**

## CONCLUSION

WHEREFORE, after careful consideration, the Court **ORDERS** that the *Defendants, City of Beckley, Beckley Police Department, and David Snuffer's Motion to Dismiss Plaintiff's Amended Complaint in Lieu of an Answer* (Document 13) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **ORDERS** that Count III, Count X, and all of the claims against

the Defendants for punitive damages be **DISMISSED**. With respect to Defendant City of Beckley, the Court **ORDERS** that Counts IV, VII, VIII, IX, X, and XI be **DISMISSED**. As to Defendant David Snuffer, the Court **ORDERS** that all of the claims against him in his official capacity as an officer with the Beckley Police Department be **DISMISSED**. With respect to Defendant Beckley Police Department, the Court **ORDERS** that it be **DISMISSED** from the action entirely. Otherwise, the Court **ORDERS** that the motion be **DENIED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 29, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA