**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

MARQUEL ALI,

                Plaintiff,

v.                              CIVIL ACTION NO.  5:17-cv-03386

RALEIGH COUNTY, et al.

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant Jason Redden in His Capacity as a Parole Officer with the West Virginia Division of Correction's Motion to Dismiss the Plaintiff's Complaint* (Document 5) and *Memorandum of Law in Support* (Document 6), the *Plaintiff's Response in Opposition* (Document 21), and *Defendant Jason Redden's Reply to the Plaintiff's Response* (Document 27).   The Court has also reviewed the Plaintiff's *Complaint* (Document 1), *Amended Complaint* (Document 23), and all attached exhibits.   For the reasons stated herein, the Court finds that the motion should be granted in part and denied in part as more fully explained below.

**FACTUAL ALLEGATIONS**

The Plaintiff, Marquel Ali, initiated this action with a complaint filed in this Court on June 23, 2017.   The Plaintiff originally named the following entities as Defendants: Raleigh County, a municipal corporation or political subdivision organized under the laws of the State of West Virginia, Raleigh County Sheriff's Department (Sheriff's Department), a law enforcement agency established, maintained, and controlled by Raleigh County, the City of Beckley, a municipal

corporation organized under the laws of the State of West Virginia, Beckley Police Department (BPD), a law enforcement agency established, maintained, and controlled by the City of Beckley, and the West Virginia State Police (WVSP), a state law enforcement agency organized under the laws of the State of West Virginia. Mr. Ali also named several individuals as Defendants, in both their individual and official capacities: Mr. Steven Tanner, a resident of Raleigh County, West Virginia, and the Sheriff of Raleigh County during the applicable time frame, Mr. Gary Epling, a resident of Raleigh County, West Virginia, and a detective with the Raleigh County Sheriff's Department, Mr. Kenneth Pack, a resident of Raleigh County, West Virginia, and an officer with the WVSP, Mr. David Snuffer, a resident of Raleigh County, West Virginia, and an officer with the BPD, and Mr. Jason Redden, a citizen of Raleigh County, West Virginia, and, during the applicable time, a parole officer with the West Virginia Department of Corrections.[1] (Amended Compl. at ¶ ¶ 2-13.)[2] The Plaintiff alleges that "all acts of the Defendants were done . . . under the color and pretense of [the law] of the State of West Virginia and under the authority of the office" by which they were employed. (*Id.* at ¶ 14.)

Mr. Ali, "an African American male with a dark complexion," was hired by the Defendant Raleigh County Sheriff's Department as a deputy and began his employment on March 18, 2014. (*Id.* at ¶ 1, 17.) The Sheriff's Department requires all new hires to complete a probationary year

---

[1] Subsequent to the time period in which most of the Plaintiff's allegations took place, Mr. Redden became a deputy with the Defendant Raleigh County Sheriff's Department. The Plaintiff does not specifically allege when Mr. Redden became a deputy sheriff.

[2] On June 7, 2017, Mr. Ali filed a *Motion for Leave to File Amended Complaint* (Document 4). While that motion was pending, the parties proceeded to brief the pending motions to dismiss. While those motions were being fully briefed, this Court issued its *Order* (Document 22) granting the motion and ordering the Plaintiff's amended complaint to be filed. After the granting of this motion, the Defendants proceeded to fully brief their motions to dismiss the original complaint. Because arguments presented by the parties in the motions to dismiss were not substantively altered by the filing of the amended complaint, the Court applies those arguments to the Plaintiff's amended complaint.

during which they receive on-the-job training and attend the West Virginia State Police Academy. According to the Plaintiff, four other new deputies were hired at the same time as him, and one of them was also an African American. The other African American had a "very light complexion," as alleged by Mr. Ali. (*Id.* at ¶ 19.) Mr. Ali alleges that he was, in fact, "the only African American officer employed with the Defendant Sheriff's Department who had a dark complexion." (*Id.* at ¶ 21.)

Mr. Ali alleges that, throughout his employment with the Defendant Sheriff's Department, he was frequently subjected to racial slurs and other inappropriate treatment. Defendant Tanner would often call him "boy" or refer to him as a "thug," other white officers would place bets on whether he would make it through his training at the police academy, and he would often receive write-ups while white officers "who engaged in the same activity were not issued any form of reprimand or other discipline." (*Id.* at ¶ 23-28.) On March 16, 2015, Mr. Ali was subjected to an interrogation regarding allegations by someone he had arrested. A white officer was present with Mr. Ali when he made the arrest, but was not subjected to the same interrogation and investigation. On the following day, "one day prior to the end of his one year probationary period," Mr. Ali was terminated from his employment by Defendant Tanner. (*Id.* at ¶ 38.) Mr. Ali appealed his termination to the Raleigh County Civil Service Commission, and attended a hearing on June 2, 2015. The parties were required to submit proposed findings of fact and conclusions of law to the Commission by June 22, 2015.

On June 23, 2015, one day after the submission of those findings of fact, the Plaintiff's cousin contacted him and asked for a ride. The Plaintiff's cousin was on parole at the time and owned no vehicle, so the Plaintiff agreed to pick him up. Prior to picking up his cousin, Mr. Ali

received a phone call from a State Trooper regarding a case he had worked on while a deputy. The trooper asked the Plaintiff if he was currently in Beckley. Mr. Ali stated that he was in Beckley, and proceeded to pick up his cousin some twenty minutes later. While in route to do so, "[a]pproximately one-half mile from the residence . . . Plaintiff noticed several unmarked police cars parked in a car wash parking lot." (*Id.* at ¶ 53.) Mr. Ali proceeded to his cousin's house where, after waiting several minutes, his cousin placed a bag in the trunk and got in the car. The two decided to go to Burger King, and when exiting the drive through with their food, the Plaintiff's car was "barricaded in by several unmarked police cars, including the cars Mr. Ali had seen near the residence when he picked up his cousin." (*Id.* at ¶ 61.) "The officers who were involved in the traffic stop knew Mr. Ali and the vehicle he drove," and also "knew that [Mr. Ali] owned a personal firearm . . . ." (*Id.* at ¶ 62.)

One of the officers approached Mr. Ali at gunpoint and asked him if he had a firearm. Although Mr. Ali responded that he did not have a firearm in the car, he was forced to the ground and handcuffed. After the Defendant officers had begun searching his car, Mr. Ali was asked to sign a consent form, and signed it, although it "had been previously completed by Defendants and/or agents of Defendants and was also incorrectly dated '6-22-2015.'" (*Id.* at ¶ 70.) After signing the form, the Plaintiff saw Defendant Epling "approach the back of the car carrying a mid-to-large sized brown or manila color envelope/package." (*Id.* at ¶ 73.) Upon completing the search of the vehicle, the Defendants allegedly found illegal drugs in the trunk and a small amount of marijuana on the Plaintiff's cousin. Both the Plaintiff and his cousin were arrested. The Plaintiff was charged with two counts of possession of a controlled substance with intent to deliver and conspiracy to commit a felony. "After Mr. Ali was arrested, the State Trooper who had called

[him] less than an hour earlier to confirm [he] was in Beckley, arrived at the scene and transported Mr. Ali to the Beckley State Police office, then to jail." (*Id.* at ¶ 80.) According to Mr. Ali, the Defendants conspired together to wrongfully and maliciously arrest and prosecute him in retaliation for his intent to bring a discrimination lawsuit against Defendant Raleigh County Sheriff's Department and Defendant Tanner.

The Defendants interrogated Mr. Ali and his cousin and conducted a criminal investigation of the charges, during which time the Defendants proactively "took steps to hide [] exculpatory evidence from Mr. Ali for nearly two years." (*Id.* at ¶ 100.) "Over the nearly two years following Mr. Ali's arrest, Defendants failed and/or refused to disclose or produce material evidence related to Mr. Ali's case despite repeated requests by Mr. Ali's counsel." (*Id.* at ¶ 103.) The Defendants also made various false claims regarding why they pulled the Plaintiff over in the Burger King parking lot. On February 13, 2017, Mr. Ali's first criminal trial began in the Circuit Court of Raleigh County, West Virginia. On February 15, after being informed that certain individuals in court had been seen speaking with potential defense witnesses in the hallway, the court declared a mistrial *sua sponte*. On May 22, 2017, a second criminal trial began on the same charges. On May 26, 2017, after a four-day trial, the jury returned a defense verdict, finding Mr. Ali not guilty on all charges. Not quite three months later, Mr. Ali filed this action.

Mr. Ali's amended complaint sets forth eleven counts: Count I - Race Discrimination, Count II - Color Discrimination,[3] Count III - Discrimination and Interference with Plaintiff's Right to Equal Benefit of the Law in Violation of 42 U.S.C. § 1981, Count IV - Warrantless Arrest Pursuant to False Tip in Violation of 42 U.S.C. § 1983, Count V - Conspiracy to Interfere with

---

3 The Plaintiff asserts the first two causes of action only against the Raleigh County Sheriff's Department and Defendant Tanner.

Constitutional Rights in Violation of 42 U.S.C. § 1985(3), Count VI - Neglect to Prevent Conspiracy to Interfere with Plaintiff's Rights, Count VII - False/Wrongful Arrest and Improper Investigation and Prosecution in Violation of 42 U.S.C. § 1983, Count VIII - Abuse of Process, Count IX - Malicious Prosecution, Count X - Negligent Infliction of Emotional Distress, and Count XI - Outrage.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id.* Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice…
[because courts] 'are not bound to accept as true a legal conclusion couched as a factual
allegation.'"  *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555
(2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,
accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Iqbal,* 556 U.S. at 678
(quoting *Twombly,* 550 U.S. at 570.)   In other words, this "plausibility standard requires a plaintiff
to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v.
Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.)   In the
complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff
has stated a claim entitling him to relief."  *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S.
at 557.)   "Determining whether a complaint states [on its face] a plausible claim for relief [which
can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."  *Iqbal,* 556 U.S. at 679.

## DISCUSSION

Defendant Redden, having filed this motion specifically in his capacity as a parole officer
for the West Virginia Division of Corrections, sets forth several different grounds for dismissal.

### A.   Sovereign Immunity

Mr. Redden first argues that all of the Plaintiff's claims against him, in his official capacity
as a parole officer, should be dismissed because he is entitled to sovereign immunity.   Mr. Redden
was a parole officer working in an official capacity for the West Virginia Division of Corrections
at the time of the Plaintiff's allegations, and he argues that claims against him in that capacity are

considered claims against the State itself. Because the State of West Virginia has sovereign immunity, Mr. Redden argues that he also has sovereign immunity from any claims filed against him in his official capacity.

In his response in opposition, the Plaintiff concedes that his claims against Defendant Redden in his official, as opposed to his individual, capacity may be subject to dismissal on grounds of sovereign immunity. The Plaintiff also concedes in his response that the Section 1983 claims against Defendant Redden in his official capacity as a parole officer with the West Virginia Division of Corrections are subject to dismissal. The Court finds that all claims against Defendant Redden in his official capacity as a parole officer for the West Virginia Division of Corrections should be dismissed.

### B. Qualified Immunity

Mr. Redden contends that the Plaintiff's Section 1983 claims against him must be dismissed because he is entitled to qualified immunity. He argues that the Plaintiff has failed to establish that Mr. Redden violated any clearly established constitutional law and is therefore entitled to qualified immunity. The Plaintiff counters that the "Amended Complaint sets forth hundreds of detailed factual allegations" explaining how Defendant Redden played a role in the unconstitutional plan to arrest him, and that Defendant Redden's motion should therefore be denied.

Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Tomashek v. Raleigh Cty. Emergency Operating Ctr.*, No. 2:17-CV-01904,

2018 WL 522420, at *3 (S.D.W. Va. Jan. 23, 2018) (Goodwin, J.) (quoting *Maciariello v. Sumner*, 973 F.3d 295, 298 (4th Cir. 1992)).  Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.)

Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–32. Courts are advised to "ask first whether a constitutional violation occurred and second whether the right violated was clearly established."[4] *Id.* "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted); Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but . . . that in the light of pre-existing law the unlawfulness must be apparent.").  The reasonableness analysis is objective.  Courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident." *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994). "[T]he officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are." *Id.* at 173.

---

4 "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Smith v. Ray*, 781 F.3d 95, 106, fn 3 (4th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

The Plaintiff asserts that Mr. Redden participated in a warrantless arrest pursuant to a false tip, a false or wrongful arrest and improper investigation, abuse of process, and malicious prosecution in violation of Section 1983. Accepting the alleged facts as true and drawing all reasonable inferences in the Plaintiff's favor, the Court finds that Defendant Redden is not entitled to qualified immunity. The Plaintiff alleges that the Defendants sought to maliciously arrest and prosecute him in retaliation for challenging his termination with the civil service commission and because he intended to sue the Raleigh County Defendants regarding his termination. He states that his cousin was in the vehicle when the Defendants initiated the interaction in question. The Plaintiff admits that his cousin was on parole, was being monitored by an ankle bracelet, and that at some point during the interaction the Defendants told him they were looking for his cousin in reference to a hold and commit order by his parole officer.

However, the Plaintiff also alleges that Defendant Redden worked in conjunction with the other individual Defendants to purposefully delay arresting the Plaintiff's cousin until he was with the Plaintiff, and that it was Defendant Redden's delay that allowed the other Defendants to use probable cause to initiate the traffic stop of the Plaintiff and his cousin. In other words, the Plaintiff alleges that without Defendant Redden knowingly conspiring with the other Defendants, there would have been no way to initiate the traffic stop in the first place. Mr. Ali further implies that the Defendants potentially planted evidence in his car during the search. Accepting these allegations as true, the Plaintiff has appropriately stated causes of action under Section 1983 for several constitutional violations. The requirement that law enforcement officers have probable cause and/or obtain a warrant before making an arrest is a clearly established right.[5] While

---

[5] In referencing the Plaintiff's constitutional right to be free of arrest without probable cause, the Court does not intend to exhaust all constitutional rights that may have been violated in this alleged scheme.

Defendant Redden in his capacity as a parole officer may have had sufficient probable cause to arrest the Plaintiff's cousin, that probable cause did not extend to the Plaintiff absent the unlawful scheme that the Plaintiff alleges here. Conspiring together to initiate this scheme against the Plaintiff in a malicious and retaliatory manner violates this clearly established constitutional right. Defendant Redden's qualified immunity defense should therefore be denied.

### C. Failure to Satisfy the Pleading Standard

Defendant Redden argues that all of the remaining claims against him in his individual capacity should be dismissed because the Plaintiff has failed to state claims which satisfy the pleading standard.

### 1. Warrantless Arrest

Defendant Redden argues that Count IV of the amended complaint should be dismissed because the Plaintiff has failed to assert any factual allegations supporting the claim that Defendant Redden is liable for warrantless arrest. Mr. Redden asserts that the Plaintiff has not alleged that Mr. Redden filed a criminal complaint against him, filed a police report, placed him in handcuffs or had any part in his arrest. Therefore, Defendant Redden argues that Count IV should be dismissed against him.

The Plaintiff counters that Defendant Redden did play a critical role in his arrest. Mr. Ali contends that, it was Defendant Redden who "provided the drug task force with a pretextual reason to pull Mr. Ali out of his vehicle at gunpoint and detain and arrest him." (Pl.'s Resp. in Opposition, at 10.) Thus, Mr. Ali argues that he has satisfactorily pled sufficient facts for his claim of warrantless arrest to survive Defendant Redden's motion to dismiss.

In support of his claim of warrantless arrest, the Plaintiff asserts that Defendant Redden intentionally and maliciously worked with the Defendants in waiting for Mr. Ali to be with his cousin to provide the other Defendants with the pretextual probable cause necessary to search his car and eventually arrest him.   The Plaintiff further alleges that the Defendants arrested Mr. Ali without any warrant or other legal process.   The Plaintiff further asserts in his complaint that the Defendants conducted these actions pursuant to a report they knew was erroneous and false. Viewing these facts in the light most favorable to the Plaintiff, and drawing all reasonable inferences in his favor, the Court finds that the Plaintiff has pled sufficient facts to state a claim against Defendant Redden for a warrantless arrest under Section 1983.   Defendant Redden's motion to dismiss this claim in Count IV should be denied.

### 2.   *Conspiracy to Violate Plaintiff's Civil Rights*

Defendant Redden also argues the Plaintiff has failed to properly plead a claim against him for conspiracy to interfere with constitutional rights in violation of 42 U.S.C. § 1985.   Defendant Redden argues that Mr. Ali did not specifically plead how Defendant Redden coordinated his sworn statements and testimony with the other Defendants, or what that testimony was.   Further, Defendant Redden argues that Mr. Ali claims that Defendant Redden was acting under the authority of the Beckley Police, Raleigh County Sheriff's Department, and West Virginia State Police, when Defendant Redden was still employed as a parole officer by the West Virginia Division of Corrections at the time.   Thus, Defendant Redden contends Mr. Ali has failed to state a claim for civil rights conspiracy against him.

The Plaintiff counters that he has appropriately pled a conspiracy between two or more people, including Defendant Redden, because he pled that Defendants Redden and Epling were

motivated by specific class-based, discriminatory animus against him. He has further pled that Defendant Redden and others deprived him of the equal enjoyment of rights under the law and caused him injuries by their overt acts. Mr. Ali therefore claims he has sufficiently pled a plausible claim for conspiracy to violate his civil rights.

Section 1985(3) provides:

> If two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]…[I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). This cause of action is directed at those who conspire to deprive protected classes of people of their rights. *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985). The federal remedy, construed broadly, is for "conspiracies involving invidious animus toward a class of persons" who are not adequately protected by the state. *Id.* at 1258 (internal quotation marks omitted). The elements of proof for a § 1985(3) cause of action are: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing *Buschi*, 775 F.2d at 1257).

Here, the Court finds that the Plaintiff has sufficiently alleged facts to state a claim for conspiracy under 1985(3). First, the Plaintiff has stated sufficient allegations to meet the conspiracy elements. He claims that Defendants Redden, Pack, Epling, and Snuffer met together to falsely create the probable cause necessary to arrest the Plaintiff and to coordinate testimony to deprive the Plaintiff of equal enjoyment of his lawful rights in a manner that resulted in his injury as a consequence of an overt act. The Plaintiff also satisfies the discriminatory animus element because he alleges that the Defendants committed these actions at the behest of Defendant Tanner, who was acting with discriminatory animus relating to the Plaintiff's race and his intent to sue Defendant Tanner and Raleigh County in a discrimination lawsuit.

Assuming these allegations to be true, the Plaintiff has sufficiently stated a plausible claim for relief pursuant to 42 U.S.C. § 1985(3). Defendant Redden's motion to dismiss Count V should be denied.

### 3. Neglect to Prevent Conspiracy

Defendant Redden argues that the Plaintiff's claim in Count VI that Defendant Redden had the power to prevent the conspiracy against Mr. Ali, but failed to do so, should be dismissed. Defendant Redden claims that the Plaintiff's allegations amount to little more than conclusions, which are insufficient to state a claim, because there is no specific mention of any facts which suggest Defendant Redden could have prevented the conspiracy. The Plaintiff counters that he has clearly shown that each and every defendant had the power to prevent or aid in preventing the commission of the illegal acts against him, and thus, the claim in Count VI should proceed against Defendant Redden.

Although not specifically stated in his amended complaint, the Plaintiff brings the claim in Count VI pursuant to 42 U.S.C. § 1986, which states, in pertinent part, that

> [e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act . . . .

To maintain a cause of action under Section 1986, a plaintiff must have sufficiently set forth a cause of action under Section 1985, because Section 1986 "merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985." *Sellner v. Panagoulis*, 565 F. Supp. 238, 249 (D. Md. 1982), *aff'd,* 796 F.2d 474 (4th Cir. 1986).

Again, the Plaintiff has alleged that the Defendants, including Defendant Redden, conspired together to use the Plaintiff's cousin and a false tip in order to manufacture probable cause to arrest the Plaintiff on drug charges without a warrant. Importantly, the Plaintiff has alleged that Defendant Redden specifically postponed the arrest of the Plaintiff's cousin, a parolee, until the cousin was with the Plaintiff, so that the other Defendants would have the requisite probable cause necessary to stop the Plaintiff's vehicle. Further, the Plaintiff has alleged that the Defendants, including Redden, conspired to coordinate their testimony, talked to witnesses and hid evidence in an effort to wrongfully convict him in retaliation for his contesting his termination from the Sheriff's Department and his intent to file suit against Sheriff Tanner and the Raleigh County Sheriff's Department. Accepting the factual allegations as true, and drawing reasonable inferences in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has pled sufficient facts to support the claim of neglect to prevent conspiracy contained in Count VI. The motion to dismiss this claim against Defendant Redden should be denied.

15

#### *4. False Arrest and Improper Investigation and Prosecution*

Defendant Redden also requests dismissal of the Plaintiff's claim in Count VII of wrongful arrest and improper investigation pursuant to 42 U.S.C. § 1983. Defendant Redden argues that the Plaintiff has failed to properly allege any facts that state how Defendant Redden falsely arrested or improperly investigated and prosecuted the Plaintiff, and that, therefore, his claim in Count VII amounts to mere conclusions such that it should be dismissed. The Plaintiff counters that he has alleged Defendant Redden knew of and attempted to hide evidence that proved Mr. Ali was innocent, and that he has stated sufficient facts to support this claim.

42 U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The Fourth Amendment mandates that a warrantless arrest be based on probable cause. *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998); *Park v. Shiflett*, 250 F.3d 843, 850-51 (4th Cir. 2001). An officer must evaluate probable cause based on the totality of the circumstances at the time of the arrest, and establish it with "facts and circumstances within the officer's knowledge [which] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *Park*, 250 F.3d at 851 (quoting *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984)).

16

Here, the Plaintiff has alleged that the Defendants, including Defendant Redden, conspired together to use the Plaintiff's cousin and a false tip in order to manufacture probable cause to arrest the Plaintiff on drug charges without a warrant. As the Court has previously found, the Plaintiff has alleged that Defendant Redden specifically postponed the arrest of the Plaintiff's cousin, a parolee, until he was with the Plaintiff, so that the other Defendants would have the requisite probable cause necessary to stop the Plaintiff's vehicle. Again, accepting the factual allegations as true, and drawing reasonable inferences in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has pled sufficient facts to support the claim that Defendant Redden violated his Fourth Amendment right to not be arrested without probable cause. The Defendant's motion to dismiss Plaintiff's claims against Defendant Redden in Count VII should be denied.

### 5. Abuse of Process

Defendant Redden seeks dismissal of the Plaintiff's claims in Count VIII for abuse of process. He argues that the Plaintiff has alleged no specific facts regarding how Defendant Redden, in his capacity as a parole officer with the West Virginia Division of Corrections, unlawfully arrested, detained, or prosecuted the Plaintiff. Mr. Ali counters that he has sufficiently pled the facts and elements required for an abuse of process violation. He further contends that, although Defendant Redden did not specifically arrest him or draft a criminal complaint, the Plaintiff has sufficiently pled that Defendant Redden conspired with the other Defendants and took actions necessary to facilitate the other Defendants' arrest of him such that Defendant Redden is also liable under this claim.

"Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process."

*Preiser v. MacQueen*, 352 S.E.2d 22, 28 (W.Va. 1985). "To properly state a claim for abuse of process, a plaintiff must allege: first, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding." *Westfield Ins. Co. v. Mitchell*, No. 2:12-CV-00585, 2013 WL 4742832, at *4 (S.D.W. Va. Sept. 3, 2013) (internal citations omitted). According to the West Virginia Supreme Court, "[t]he authorities are practically unanimous in holding that to maintain the action [for abuse of process] there must be proof of a willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object—an intentional and willful perversion of it to the unlawful injury of another." *Preiser*, 352 S.E.2d at 28.

The Court finds that the Plaintiff has sufficiently pled the required elements of a cause of action for abuse of process. The Plaintiff alleges in his complaint that the Defendants, with Defendant Redden as a parole officer playing a critical part, conspired together to purposefully use the Plaintiff's cousin to provide the probable cause necessary to arrest the Plaintiff without a warrant and charge him with drug offenses, knowing that he was not actually involved in the trafficking of drugs. The Plaintiff further alleges that the Defendants arrested him in this improper manner in retaliation for the Plaintiff's challenge of his firing from the Raleigh County Sheriff's Department on grounds of racial discrimination. Viewing these allegations in the light most favorable to the Plaintiff, Mr. Ali has stated a claim for relief that is plausible on its face. Defendant Redden's motion should be denied as to Count VIII.

### 6. *Malicious Prosecution*

Defendant Redden further seeks dismissal of the Plaintiff's malicious prosecution claims alleged against him in Count IX. Defendant Redden again argues that the claim should be

dismissed because the Plaintiff has failed to plead how Defendant Redden, in his individual capacity as a parole officer, has caused or took part in a malicious prosecution against the Plaintiff. The Plaintiff counters that he has sufficiently alleged the necessary elements for a malicious prosecution claim.

According to the West Virginia Supreme Court,

> [i]n an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover.

Syl. Pt. 3, *Hines v. Hills Dep't Stores, Inc.*, 454 S.E.2d 385, 387 (W.Va. 1994). In a separate line of cases, the West Virginia Supreme Court held that the requisite elements for a malicious prosecution were only three, and included "(1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff." Syl. Pt. 1, *Preiser*, 352 S.E.2d at 22. However, in examining these two different delineations of the malicious prosecution elements, the same court held that they were the same, and that "procurement [of the prosecution by the defendant] is an inherent element in both." *Norfolk S. Ry. Co. v. Higginbotham*, 721 S.E.2d 541, 546 (W.Va. 2011).

The Plaintiff has sufficiently pled facts to satisfy the elements of a malicious prosecution claim. Mr. Ali alleges that Defendant Redden worked in concert with other Defendants to facilitate false probable cause so that other Defendants could arrest and eventually prosecute him. Mr. Ali alleges that Defendant Redden admitted under oath that he was responsible for delaying the arrest of Mr. Ali's cousin until he was with Mr. Ali, even though he had previous opportunities to arrest the cousin. The Plaintiff further alleges that this was done with malice in response to the

Plaintiff's stated intention to file suit against the Raleigh County defendants for racial animus and discrimination. The prosecution by the Defendants terminated in Mr. Ali's favor when the jury found him not guilty. Again, viewing these allegations in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has sufficiently alleged a claim of malicious prosecution in Count IX, such that Defendant Redden's motion to dismiss should be denied.

*7. Negligent Infliction of Emotional Distress*

Defendant Redden moves for dismissal of the Plaintiff's claims for negligent infliction of emotional distress in Count X. He argues that the Plaintiff has failed to sufficiently plead the elements for the claim or show that Defendant Redden in his capacity as a parole officer owed him any duty. The Plaintiff counters that "Defendant Redden's conclusory comment required no rebuttal, other than to note that the Amended Complaint does in fact properly plead the elements of negligent infliction of emotional distress as against Defendant Redden." (Pls.' Resp. in Opposition at 17.)

Negligent infliction of emotional distress claims require "a plaintiff [who] experience[s] serious emotional distress, after the plaintiff witnesses a person closely related to the plaintiff suffer critical injury or death as a result of the defendant's negligent conduct." Syl. Pt. 1, *Heldreth v. Marrs*, 425 S.E.2d 157, 158 (W.Va. 1992). Here, the Plaintiff has asserted no set of facts to support such a claim, inasmuch as he alleges that the Defendant negligently caused him emotional distress based on acts directed at the Plaintiff, himself. Count X of the amended complaint should be dismissed.

*8. Outrage*

Finally, Defendant Redden seeks dismissal of the Plaintiff's claim of outrage as alleged in Count XI of the amended complaint. Defendant Redden argues that the Plaintiff fails to allege such conduct that is so extreme and outrageous that it goes above and beyond conduct that was tortious or criminal in nature to support the tort of outrage. The Plaintiff counters that Defendant Redden and the other Defendants acted in a manner that was so extreme and outrageous that it went beyond the bounds of decency. The Plaintiff contends that Defendant Redden played a critical part in a conspiracy that forced the Plaintiff to face two criminal trials and, had it been effective to its fullest extent, would have subjected the Plaintiff to several years in state prison for a crime he did not commit—a crime that Mr. Redden and the other Defendants knew he did not commit. Mr. Ali argues the acts of Defendant Redden and the other actors were sufficiently outrageous and extreme to support a claim for the tort of outrage.

In West Virginia, the tort of outrage, or intentional infliction of emotional distress, follows the Restatement of Torts (Second): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982). The West Virginia Supreme Court has established the following elements for this claim:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998) (reaffirmed in *Hatfield v. Health Mgmt. Associates of W. Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008).   The court further explained that "whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination."   Syl. pt. 4, *id.*

Courts have struggled to determine whether conduct may reasonably be considered outrageous.   *Courtney v. Courtney*, 413 S.E.2d 418, 422 (W. Va. 1991) (reviewing several cases considering the question).   Plaintiffs must make a showing that "the defendant's actions toward the plaintiff were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency" and be viewed as intolerable in a civilized society.   *Travis*, 504 S.E.2d at 425. "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct.   On the other hand, outrageous conduct can include physical violence that causes bodily harm and emotional distress."   *Courtney*, 413 S.E.2d at 423–424 (internal citations removed).

The Plaintiff has alleged that, by conspiring with the other Defendants, Defendant Redden knowingly used false probable cause to facilitate the Defendants' arrest of Mr. Ali without a warrant.   Mr. Ali alleges that the Defendants, including Defendant Redden, did so in order to inflict emotional distress and scare him in retaliation for his intention to file a discrimination lawsuit against Defendants Tanner and the Raleigh County Sheriff's Department.   The Plaintiff further alleges that the Defendants falsely arrested and accused him, hid evidence from him, and forced him to face trial twice, at the risk of facing several years in prison for crimes the Defendants knew he did not commit.   When viewing these allegations in the light most favorable to the Plaintiff, the Court finds that he has stated conduct which can reasonably be viewed as outrageous

and sufficient to survive the motion to dismiss.   The motion to dismiss as to Count XI should be denied.

## CONCLUSION

WHEREFORE, after careful consideration, the Court **ORDERS** that the *Defendant Jason Redden in his Capacity as a Parole Officer with the West Virginia Division of Correction's Motion to Dismiss the Plaintiff's Complaint* (Document 5) be **GRANTED IN PART and DENIED IN PART**.   Specifically, the Court **ORDERS** that all of the Plaintiff's claims against Defendant Jason Redden in his official capacity as a parole officer for the West Virginia Division of Corrections be **DISMISSED**.   The Court further **ORDERS** that the motion be **GRANTED** as to Count X, and that this count be **DISMISSED** against Defendant Jason Redden in his individual capacity.   Otherwise, the Court **ORDERS** that the motion be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:   March 29, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA