**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION**

MARQUEL ALI,

                Plaintiff,

v.                                   CIVIL ACTION NO.  5:17-cv-03386

RALEIGH COUNTY, et al.

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants West Virginia State Police and Corporal Kenneth Pack's Motion to Dismiss* (Document 38) and *Memorandum in Support* (Document 39), the *Plaintiff's Response in Opposition* (Document 43), and the *Defendants' Reply* (Document 45). The Court has also reviewed the Plaintiff's *Complaint* (Document 1), *Amended Complaint* (Document 23), and all attached exhibits.   For the reasons stated herein, the Court finds that the motion should be granted in part and denied in part.

**FACTUAL ALLEGATIONS**

The Plaintiff, Marquel Ali, initiated this action with a complaint filed in this Court on June 23, 2017.   The Plaintiff originally named the following entities as Defendants: Raleigh County, a municipal corporation organized under the laws of the State of West Virginia, Raleigh County Sheriff's Department (Sheriff's Department), a law enforcement agency established, maintained, and controlled by Raleigh County, the City of Beckley, a municipal corporation organized under

the laws of the State of West Virginia, Beckley Police Department (BPD), a law enforcement agency established, maintained, and controlled by the City of Beckley, and the West Virginia State Police (WVSP), a state law enforcement agency organized under the laws of the State of West Virginia. Mr. Ali also named several individuals as Defendants, in both their individual and official capacities: Mr. Steven Tanner, a resident of Raleigh County, West Virginia, and the Sheriff of Raleigh County during the applicable time frame, Mr. Gary Epling, a resident of Raleigh County, West Virginia, and a detective with the Raleigh County Sheriff's Department, Mr. Kenneth Pack, a resident of Raleigh County, West Virginia, and an officer with the WVSP, Mr. David Snuffer, a resident of Raleigh County, West Virginia, and an officer with the BPD, and Mr. Jason Redden, a citizen of Raleigh County, West Virginia, and, during the applicable time, a parole officer with the West Virginia Department of Corrections.[1] (Amended Compl. at ¶ ¶ 2-13.)[2] The Plaintiff alleges that "all acts of the Defendants were done . . . under the color and pretense of [the law] of the State of West Virginia and under the authority of the office" by which they were employed. (*Id.* at ¶ 14.)

Mr. Ali, "an African American male with a dark complexion," was hired by the Defendant Raleigh County Sheriff's Department as a deputy and began his employment on March 18, 2014. (*Id.* at ¶ 1, 17.) The Sheriff's Department requires all new hires to complete a probationary year

---

1 Subsequent to the time period in which most of the Plaintiff's allegations took place, Mr. Redden became a deputy with the Defendant Raleigh County Sheriff's Department. The Plaintiff does not specifically allege when Mr. Redden became a deputy sheriff.

2 On June 7, 2017, Mr. Ali filed a *Motion for Leave to File Amended Complaint* (Document 4). While that motion was pending, the parties proceeded to brief the pending motions to dismiss. While those motions were being fully briefed, this Court issued its *Order* (Document 22) granting the motion and ordering the Plaintiff's amended complaint to be filed. After the granting of this motion, the Defendants proceeded to fully brief their motions to dismiss the original complaint. Because arguments presented by the parties in the motions to dismiss were not substantively altered by the filing of the amended complaint, the Court applies those arguments to the Plaintiff's amended complaint.

during which they receive on-the-job training and attend the West Virginia State Police Academy. According to the Plaintiff, four other new deputies were hired at the same time as him, and one of them was also an African American. The other African American had a "very light complexion," as alleged by Mr. Ali. (*Id.* at ¶ 19.) Mr. Ali alleges that he was, in fact, "the only African American officer employed with the Defendant Sheriff's Department who had a dark complexion." (*Id.* at ¶ 21.)

Mr. Ali alleges that, throughout his employment with the Defendant Sheriff's Department, he was frequently subjected to racial slurs and other inappropriate treatment. Defendant Tanner would often call him "boy" or refer to him as a "thug," other white officers would place bets on whether he would make it through his training at the police academy, and he would often receive write-ups while white officers "who engaged in the same activity were not issued any form of reprimand or other discipline." (*Id.* at ¶ 23-28.) On March 16, 2015, Mr. Ali was subjected to an interrogation regarding allegations by someone he had arrested. A white officer was present with Mr. Ali when he made the arrest but was not subjected to the same interrogation and investigation. On the following day, "one day prior to the end of his one-year probationary period," Mr. Ali was terminated from his employment by Defendant Tanner. (*Id.* at ¶ 38.) Mr. Ali appealed his termination to the Raleigh County Civil Service Commission and attended a hearing on June 2, 2015. The parties were required to submit proposed findings of fact and conclusions of law to the Commission by June 22, 2015.

On June 23, 2015, one day after the submission of those findings of fact, the Plaintiff's cousin contacted him and asked for a ride. The Plaintiff's cousin was on parole at the time and owned no vehicle, so the Plaintiff agreed to pick him up. Prior to picking up his cousin, Mr. Ali

received a phone call from a State Trooper regarding a case he had worked on while a deputy. The trooper asked the Plaintiff if he was currently in Beckley. Mr. Ali stated that he was in Beckley and proceeded to pick up his cousin some twenty minutes later. While in route to do so, "[a]pproximately one-half mile from the residence . . . Plaintiff noticed several unmarked police cars parked in a car wash parking lot." (*Id.* at ¶ 53.) Mr. Ali proceeded to his cousin's house where, after waiting several minutes, his cousin placed a bag in the trunk and got in the car. The two decided to go to Burger King, and when exiting the drive through with their food, the Plaintiff's car was "barricaded in by several unmarked police cars, including the cars Mr. Ali had seen near the residence when he picked up his cousin." (*Id.* at ¶ 61.) "The officers who were involved in the traffic stop knew Mr. Ali and the vehicle he drove," and also "knew that [Mr. Ali] owned a personal firearm . . ." (*Id.* at ¶ 62.)

One of the officers approached Mr. Ali at gunpoint and asked him if he had a firearm. Although Mr. Ali responded that he did not have a firearm in the car, he was forced to the ground and handcuffed. After the Defendant officers had begun searching his car, Mr. Ali was asked to sign a consent form, and signed it, although it "had been previously completed by Defendants and/or agents of Defendants and was also incorrectly dated '6-22-2015.'" (*Id.* at ¶ 70.) After signing the form, the Plaintiff saw Defendant Epling "approach the back of the car carrying a mid-to-large sized brown or manila color envelope/package." (*Id.* at ¶ 73.) Upon completing the search of the vehicle, the Defendants allegedly found illegal drugs in the trunk and a small amount of marijuana on the Plaintiff's cousin. Both the Plaintiff and his cousin were arrested. The Plaintiff was charged with two counts of possession of a controlled substance with intent to deliver and conspiracy to commit a felony. "After Mr. Ali was arrested, the State Trooper who had called

4

[him] less than an hour earlier to confirm [he] was in Beckley, arrived at the scene and transported Mr. Ali to the Beckley State Police office, then to jail." (*Id.* at ¶ 80.) According to Mr. Ali, the Defendants conspired together to wrongfully and maliciously arrest and prosecute him in retaliation for his intent to bring a discrimination lawsuit against Defendant Raleigh County Sheriff's Department and Defendant Tanner.

The Defendants interrogated Mr. Ali and his cousin and conducted a criminal investigation of the charges, during which time the Defendants proactively "took steps to hide [] exculpatory evidence from Mr. Ali for nearly two years." (*Id.* at ¶ 100.) "Over the nearly two years following Mr. Ali's arrest, Defendants failed and/or refused to disclose or produce material evidence related to Mr. Ali's case despite repeated requests by Mr. Ali's counsel." (*Id.* at ¶ 103.) The Defendants also made various false claims regarding why they pulled the Plaintiff over in the Burger King parking lot. On February 13, 2017, Mr. Ali's first criminal trial began in the Circuit Court of Raleigh County, West Virginia. On February 15, after being informed that certain individuals in court had been seen speaking with potential defense witnesses in the hallway, the court declared a mistrial *sua sponte*. On May 22, 2017, a second criminal trial began on the same charges. On May 26, 2017, after a four-day trial, the jury returned a defense verdict, finding Mr. Ali not guilty on all charges. Not quite three months later, Mr. Ali filed this action.

Mr. Ali's amended complaint sets forth eleven counts: Count I - Race Discrimination, Count II - Color Discrimination,[3] Count III - Discrimination and Interference with Plaintiff's Right to Equal Benefit of the Law in Violation of 42 U.S.C. § 1981, Count IV - Warrantless Arrest Pursuant to False Tip in Violation of 42 U.S.C. § 1983, Count V - Conspiracy to Interfere with

---

3 The Plaintiff asserts the first two causes of action only against the Raleigh County Sheriff's Department and Defendant Tanner, rendering those claims irrelevant to these Defendants and their motion to dismiss.

Constitutional Rights in Violation of 42 U.S.C. § 1985(3), Count VI - Neglect to Prevent Conspiracy to Interfere with Plaintiff's Rights, Count VII - False/Wrongful Arrest and Improper Investigation and Prosecution in Violation of 42 U.S.C. § 1983, Count VIII - Abuse of Process, Count IX - Malicious Prosecution, Count X - Negligent Infliction of Emotional Distress, and Count XI - Outrage.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id.* Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

### DISCUSSION

The West Virginia State Police and Corporal Kenneth Pack move for dismissal of the Plaintiff's amended complaint on several grounds.

### A. Sovereign Immunity

The WVSP and Defendant Pack first argue that all the Plaintiff's claims against the WVSP specifically and Defendant Pack in his official capacity as an officer with the WVSP should be dismissed based on the doctrine of sovereign immunity. The Defendants argue because the WVSP is an agency of the State of West Virginia, any suit against it or against Defendant Pack in

his official capacity are suits against the state, and such suits are prohibited by the doctrine of sovereign immunity pursuant to *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).

The Plaintiff concedes in his response in opposition that his Section 1983 claims against the West Virginia State Police and Defendant Pack in his official capacity as a state police officer are subject to dismissal on sovereign immunity grounds. He contends, however, that his state claims against the Defendants that fall outside of the purview of Section 1983 are not barred by sovereign immunity. According to Mr. Ali, the United States Supreme Court's opinion in *Will* only bars Section 1983 suits, but all other claims not brought pursuant to Section 1983 may continue so long as he has pled sufficient facts to state a claim for which relief may be granted, a standard he argues he has satisfied. Mr. Ali further argues that *Will* does not apply to Defendant Pack in this instance. Although employed by the West Virginia State Police, Mr. Ali argues Defendant Pack was working as a member of the Beckley/Raleigh County Drug and Violent Crime Unit, rendering whatever sovereign immunity might normally apply to the West Virginia State Police inapplicable here pursuant to West Virginia Code § 15-10-4(b). Thus, the Plaintiff argues that Defendant Pack is not entitled to sovereign immunity under *Will*.

The Court finds that sovereign immunity is applicable to the Plaintiff's claims against the West Virginia State Police and Defendant Pack in his official capacity as a state trooper. As the Plaintiff has conceded, his Section 1983 claims against the WVSP and Defendant Pack in his official capacity are barred under sovereign immunity, and they must therefore be dismissed. The Court further finds, however, that any remaining counts against the WVSP and Defendant Pack in his official capacity must also be dismissed. "The Eleventh Amendment traditionally 'bars citizens from bringing suits in federal court against their own states.'" *Hupp v. Cook*, 2:17-CV-

00926, 2017 WL 3392780, at *3 (S.D.W. Va. Aug. 7, 2017) (Johnston, C.J.) (quoting *Bragg v. W.Va. Coal Ass'n.*, 248 F.3d 275. 291 (4th Cir. 2001)). This bar extends to "state officials sued in their official capacities for retrospective money damages," as they are considered arms of the state. *Id.*; *see also*, *Will*, 491 U.S. at 70-71. "Where, as here, 'a State's federal-court participation is involuntary' . . . the State retains the full protection of the Eleventh Amendment." *Hupp*, 2017 WL 3392780 at *3. Thus, because the Plaintiff brought this action in federal court, and because the Defendants have not waived their Eleventh Amendment right to sovereign immunity, sovereign immunity is applicable here as to the West Virginia State Police and Defendant Pack in his official capacity as an officer of the West Virginia State Police.

Moreover, the Plaintiff's argument that Defendant Pack is not entitled to sovereign immunity in his official capacity as a state trooper pursuant to West Virginia Code § 15-10-4(b) is without merit. According to West Virginia law,

> [w]hile temporarily assigned to work with another law-enforcement agency or agencies, criminal justice enforcement personnel and other state and local law-enforcement officers shall have the same jurisdiction, powers, privileges and immunities, including those relating to the defense of civil actions, as such criminal justice enforcement personnel would enjoy if actually employed by the agency to which they are assigned, **in addition to any corresponding or varying jurisdiction, powers, privileges and immunities conferred by virtue of their continued employment with the assisting agency.**

W. Va. Code § 15-10-4(b) (emphasis added). Mr. Ali relies on this statutory language providing that the assisting officer with a temporary assignment "shall have the same jurisdiction, powers, privileges and immunities as . . . the agency to which they are assigned" in arguing that Defendant Pack as an officer with the West Virginia State Police assigned to the Drug and Violent Crime Unit is not part of the state agency when acting as a member of the Drug and Violent Crime Unit.

The Plaintiff ignores the end of the statutory language, however, which states that the officer assigned to the cooperating unit has the same privileges and immunities as the unit to which he is assigned "*in addition to* any *corresponding or varying . . . privileges and immunities* conferred by virtue of [his] *continued employment with the assisting agency.*" *Id.* (emphasis added). Here, because the officer in question is a trooper with the WVSP, the assisting agency would be the WVSP, and the assisting officer assigned to the DVCU would retain the same immunity he has as an officer with the WVSP. In other words, the WVSP does not lose its immunity from Section 1983 suits as a state agency simply because one of its troopers works in conjunction with another law enforcement agency, and neither does Defendant Pack as an officer of the WVSP.

In sum, the Court finds that all the Plaintiff's claims against the West Virginia State Police and Defendant Pack in his official capacity as a state trooper should be dismissed.

### B. Qualified Immunity

Defendant Pack also argues that he is entitled to qualified immunity from the Plaintiff's claims. He asserts a general qualified immunity to all the Plaintiff's claims and a qualified immunity from the Plaintiff's negligence claims in particular. Defendant Pack first asserts that qualified immunity bars the Plaintiff's claims in Counts VI and X wherein the Plaintiff alleges negligent acts on Defendant Pack's behalf. Relying on *Clark v. Dunn*, 465 S.E.2d 374 (W.Va. 1995), he argues that West Virginia law bars negligence claims against a state agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act. Because the West Virginia State Police is not subject to this act, Defendant Pack argues that the negligence claims against him are barred by qualified immunity. Defendant Pack further argues that all the

10

remaining claims against him are barred by his qualified immunity because, in all the facts alleged against him, he was attempting in good faith to carry out discretionary duties as an officer of the West Virginia State Police.   He asserts that the Plaintiff's claims turn on his subjective intent and are thus barred under the qualified immunity standard.

The Plaintiff counters that Defendant Pack is not entitled to qualified immunity.   With respect to the negligence claims specifically, Mr. Ali argues that he has sufficiently pled that Defendant Pack's acts, along with the acts of the other Defendants, were malicious in nature. Thus, Mr. Ali contends that *Clark v. Dunn* does not apply, and Defendant Pack is not shielded from his negligence claims.   Mr. Ali further counters that qualified immunity does not shield Defendant Pack from the remainder of the claims because he has sufficiently pled that Defendant Pack did not act in good faith.   He claims that he has asserted "numerous violations of his rights, including . . . equal protection, freedom from discrimination and warrantless and false arrest," and that the facts he alleges establish a plausible claim that Defendant Pack, in working with the other Defendants, did not act in good faith.   (Pl.'s Resp. in Opp., at 12.)

"Qualified immunity is 'a different kind of limited immunity to the State and its law enforcement officer for discretionary acts negligently committed within the scope of his employment.'"   *Hupp*, 2017 WL 3392780 at \*4.   According to the West Virginia Supreme Court of Appeals,

> [i]n the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a state agency not within the purview of the west Virginia Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29-12A-1, *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

Syl. Pt. 6, *Clark*, 465 S.E.2d at 374; Syl. Pt. 7, *Jarvis v. W. Virginia State Police*, 711 S.E.2d 542, 544 (W.Va. 2010). Because the West Virginia State Police is not a political subdivision, but a state agency and thus an arm of the State of West Virginia, "the State Police is not subject to the West Virginia Governmental Tort Claims and Insurance Reform Act []." *Hupp*, 2017 WL 3392780 at *5. Because Defendant Pack as a State Police officer is not subject to the West Virginia Governmental Tort Claims and Insurance Reform Act, and because the Plaintiff's claims against him in Counts VI and X allege mere negligence, qualified immunity bars those claims and they must be dismissed. *See Sweat v. W. Virginia*, No. CV 3:16-5252, 2016 WL 7422678, at *8 (S.D.W. Va. Dec. 22, 2016) (Chambers, J.) ("The doctrine of [of qualified immunity] protects all government officials who exercise their discretion in fulfilling their duties . . . *Negligence simply is not sufficient for liability to be imposed under this standard.*") (emphasis in original).

As for the remaining counts not alleging negligence, the doctrine of qualified immunity holds that "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Tomashek v. Raleigh Cty. Emergency Operating Ctr.*, No. 2:17-CV-01904, 2018 WL 522420, at *3 (S.D.W. Va. Jan. 23, 2018) (Goodwin, J.) (quoting *Maciariello v. Sumner*, 973 F.3d 295, 298 (4th Cir. 1992)). Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.)

Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231–

32. Courts are advised to "ask first whether a constitutional violation occurred and second whether the right violated was clearly established."[4]  *Id.*  "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but . . . that in the light of pre-existing law the unlawfulness must be apparent.").  The reasonableness analysis is objective.  Courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident."  *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994).  "[T]he officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are."  *Id.* at 173.

Accepting the allegations as true and drawing all reasonable inferences in the Plaintiff's favor, the Court finds that Defendant Pack has not shown that he is entitled to qualified immunity on the remaining non-negligence claims.  The Plaintiff asserts that Defendant Pack, in concert with the other individual Defendants, participated in a warrantless arrest pursuant to a false tip, a false or wrongful arrest and improper investigation, abuse of process, and malicious prosecution in violation of Section 1983.  He alleges that the Defendants sought to maliciously arrest and prosecute him in retaliation for challenging his termination to the civil service commission and

---

4 "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'"  *Smith v. Ray*, 781 F.3d 95, 106, fn 3 (4th Cir. 2015) (citing *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)).

because he intended to sue the Raleigh County Defendants regarding his termination. He states that his cousin was in the vehicle when the Defendants initiated the interaction in question, and admits that his cousin was on parole and being monitored by an ankle bracelet. At some point during the interaction, the Plaintiff claims the Defendants informed him they were looking for his cousin in reference to a hold and commit order by his parole officer.

However, Mr. Ali also alleges that the Defendant knowingly worked in conjunction with Defendant Redden to purposefully delay arresting the Plaintiff's cousin until he was with the Plaintiff, and that it was this delay that allowed the Defendants to ascertain the improper probable cause to initiate the traffic stop of the Plaintiff. In other words, the Plaintiff alleges that Defendant Pack and the other Defendants worked with Defendant Redden as a parole officer to stop the Plaintiff when they knew they had no other legitimate reasonable suspicion or probable cause to stop and eventually arrest him. Mr. Ali further implies that the Defendants potentially planted evidence in his car during the search and continued to take part in the conspiracy by coordinating their testimony and assisting in the other Defendants' failure to turn over exculpatory evidence.

Accepting those allegations as true, the Plaintiff has appropriately stated causes of action under Section 1983 for several constitutional violations. The requirement that law enforcement officers have probable cause before making an arrest is a clearly established right. While Defendant Pack may have had sufficient probable cause to arrest the Plaintiff's cousin, that probable cause did not extend to the Plaintiff without the scheme that the Plaintiff alleges here. Further, Mr. Ali alleges that Defendant Pack continued to be involved in the alleged improper investigation and prosecution after the arrest. Conspiring together to initiate this scheme against

the Plaintiff in a malicious and retaliatory manner violates clearly established constitutional rights, and the Defendants' qualified immunity defense should be denied as to the remaining non-negligence claims.

C.   <em>Heightened Pleading Standard</em>

Defendant Pack argues that any remaining civil rights claims against him should be dismissed because the Plaintiff has failed to satisfy the heightened pleading standard in civil rights cases.   According to Defendant Pack, the plaintiff must "allege the specific conduct violating the plaintiff's right, the time and place of that conduct, and the identity of the responsible officials." (Defs.' Mem. in Supp., at 7.)   He asserts that the Plaintiff has failed to satisfy that standard here, because the Amended Complaint only refers to actions taken generally by a group of "Defendants." Defendant Pack argues that the Plaintiff's complaint fails to identify precisely who removed Plaintiff from his vehicle, handcuffed him, asked him to sign a consent to the search warrant, and several other actions that Defendant Pack argues are necessary for the Plaintiff to specify in detail to allow his civil rights claims to survive the motion to dismiss stage.   Because the Plaintiff has failed to plead the appropriate facts, Defendant Pack argues that all the civil rights claims should be dismissed.

The Plaintiff counters that he has not failed to adequately plead his civil rights claims. Mr. Ali contends that he only needs to allege facts supporting a plausible claim under the holdings established in <em>Bell Atlantic Corp. v. Twombly</em>, 550 U.S. 544 (2007) and <em>Ashcroft v. Iqbal</em>, 556 U.S. 662 (2009).   He argues that he has done so here, asserting that his complaint does allege specific allegations that Defendant Pack was involved in his arrest and the search of his car.   He further claims that his complaint contains allegations that Defendant Pack provided contradictory

15

testimony during his criminal trials. Thus, Mr. Ali argues that he has satisfied any and all pleading standards imposed on his civil rights claims, and they should not be dismissed.

As previously stated, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) Further, "[i]n civil rights cases against government officials, the 'complaint can survive a motion to dismiss only if it . . . alleges the specific conduct violating the plaintiff's right, the time and place of that conduct, and the identity of the responsible officials.'" *Souk v. City of Mount Hope*, No. 2:14-CV-26442, 2015 WL 5698509, at *2 (S.D.W. Va. Sept. 28, 2015) (Johnson, C.J.) (quoting *Preast v. McGill*, 65 F.Supp.2d 395, 403 (S.D.W. Va. 1999)). Mr. Ali has alleged that on the morning of June 23, 2015, Defendant Pack specifically worked in concert with the other named Defendants to create a false probable cause against him in order to arrest him and charge him with drug crimes. He further alleges in his amended complaint that Defendant Pack worked with the other named Defendants to provide false testimony throughout the legal proceedings against him. These allegations set forth specific conduct that violated the Plaintiff's constitutional rights, the time and place of that conduct, and the identity of the responsible parties. Thus, the Plaintiff has properly pled his civil rights claims against Defendant Pack, and his civil rights claims should not be dismissed for failure to state a claim given the appropriate pleading standard.

Defendant Pack next seeks dismissal of the Plaintiff's claims in Count III brought pursuant to 42 U.S.C. § 1981.   Mr. Pack argues that the Plaintiff has failed to state any facts indicating that he had any racial animus toward the Plaintiff or took any personally discriminatory action. Moreover, Defendant Pack argues that the Plaintiff's claim for discrimination and interference with his rights to equal benefits under the law should have been brought pursuant to 42 U.S.C. § 1983 as opposed to 42 U.S.C. § 1981, because Section 1981 does not provide for a remedy against state actors.   Defendant Pack bases this argument on the United States Supreme Court holding, in *Jett v. Dallas Independent School District,* that Section 1983 is the exclusive remedy for a claim against a state actor accused of violating rights secured under Section 1981.   Defendant Pack argues that this holding was adopted by the Fourth Circuit in *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995), and that the Plaintiff's claim for relief under Section 1981 should therefore be dismissed.

The Plaintiff disagrees.   He first counters that *Dennis* does not apply to Defendant Pack because he was working with the Beckley/Raleigh County Drug and Violent Crime Unit and was thus not a state actor.   Moreover, Mr. Ali contends that the holding in *Jett* is inappropriate based on the 1991 amendments to the Civil Rights Act.   He asks this Court to disregard both the holding in *Jett* and the Fourth Circuit's affirmation of it in *Dennis* and to find that the Plaintiff can plead a claim for discrimination under Section 1981 against state actors in their individual capacities.

Insofar as the Court has already addressed the Plaintiff's arguments regarding Defendant Pack's work with the Drug and Violent Crime Unit and how that work affects Defendant Pack's immunity, the Court need not address that issue again here and finds that it does not undermine

Defendant Pack's status as a state actor. Regarding the Section 1981 argument specifically, in *Jett*, the Supreme Court found that Section 1983 of the Civil Rights Act provides the only remedy for violations of the rights guaranteed in Section 1981 of the same Act. *See*, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). The Fourth Circuit affirmed this ruling in *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). There, the Fourth Circuit held that discrimination claims against state actors, specifically a county government in that case, must be brought under Section 1983, as that "is the 'exclusive remedy for violation of the rights guaranteed in § 1981.'" *Id.* (quoting *Jett*, 491 U.S. at 733). The *Dennis* court specifically explained in its finding that it "[did] not believe that this aspect of *Jett* was affected by the Civil Rights Act of 1991 . . . We think the correct reading of the amendment . . . recognizes that [the addition of] subsection (c) [to § 1981] did not purport to overrule *Jett's* holding with respect to municipal liability . . . ." *Dennis*, 55 F.3d at 56; *see also*, *Toomer-Frazier v. Columbia, City of*, 680 F. App'x 244, 245 (4th Cir. 2017).

The Plaintiff argues that the Court should disregard the holdings of *Jett* and *Dennis*. In reliance on *Stout v. Reuschling*, a case from the United States District Court for the District of Maryland, the Plaintiff argues that *Jett* and *Dennis* merely stand for the proposition that Section 1981 claims cannot be asserted as independent causes of action against a state or municipal entity only. *See*, *Stout v. Reuschling*, No. CIV.A. TDC-14-1555, 2015 WL 1461366, at *7 (D. Md. Mar. 27, 2015).

The Court is not persuaded by the ruling in *Stout*. While the *Stout* court's analysis is based on the 1991 amendments to the Civil Rights Act, the Fourth Circuit specifically explained in *Dennis* that it did not believe those amendments altered the Supreme Court's holding in *Jett*.

Given the rulings of the Supreme Court and the Fourth Circuit, the Court finds that Section 1981 does not provide an independent cause of action. The Plaintiff's claims in Count III should therefore be dismissed.

### E. *Warrantless Arrest Pursuant to False Tip in Violation of 42 U.S.C. § 1983*

Defendant Pack seeks dismissal of the Plaintiff's claims brought in Count IV alleging a warrantless arrest pursuant to a false tip in violation of 42 U.S.C. § 1983. Defendant Pack argues that Mr. Ali has failed to allege sufficient facts to satisfy the pleading standard of such a claim. Defendant Pack argues that the Plaintiff has failed to allege that there was a false tip at all, and that if there was, Defendant Pack did not receive it. Moreover, Defendant Pack argues that he had no duty to second guess the police work of other officers, so that even if they were relying on a false tip as alleged by the Plaintiff, he was entitled to rely on the information he received from them. Because he was permitted to rely on the probable cause established by the drugs found in the car to aid in the arrest of the Plaintiff, Defendant Pack argues that the warrantless arrest claim should be dismissed as to him. The Plaintiff counters that he has alleged facts sufficient to sustain his claim in Count IV.

The Court finds that the Plaintiff has sufficiently alleged facts to support a claim against Defendant Pack in Count IV. To state a claim for warrantless arrest under Section 1983, the Plaintiff must show that he was arrested without probable cause. Here, The Plaintiff has alleged that Defendant Pack worked in concert with the other named Defendants to arrest him when no warrant was obtained, and that Defendant Pack had knowledge of the alleged employment dispute between the Plaintiff and the Raleigh County Sheriff's Department. The Plaintiff has further alleged that Defendant Pack worked in concert with the other named Defendants in arresting him

with the knowledge that the alleged illegal activity was falsely made up by other named Defendants in order to create probable cause.    Accepting these allegations to be true, the Plaintiff has satisfactorily alleged a claim of warrantless arrest against Defendant Pack and his motion to dismiss Count IV should be denied.

### F.    Conspiracy to Interfere Pursuant to 42 U.S.C. § 1985(3)

Defendant Pack further seeks to dismiss the Plaintiff's claim in Count V brought pursuant to 42 U.S.C. § 1985(3).    Defendant Pack argues that he acted as a member of the Drug Task Force, one entity comprised of officers from several different agencies.    Because this group acted in concert in making the arrest of the Plaintiff, Defendant Pack argues that the intracorporate conspiracy doctrine prevents the Plaintiff from bringing his Section 1985 conspiracy claim against individual defendants who are a part of that task force, since one legal entity cannot be liable for a conspiracy.    Defendant Pack also argues that, even if the intracorporate conspiracy doctrine does not apply, Mr. Ali has failed to plead sufficient facts to state a claim under Section 1985, and this count must therefore be dismissed.

The Plaintiff first counters that the intracorporate conspiracy doctrine does not apply to Defendant Pack.    He asserts that he has named as defendants multiple, non-state entities as opposed to one single entity, negating the doctrine.    He further contends that he has sufficiently plead the necessary facts for his Section 1985 claim to continue.    He argues that he has alleged a plan by the Defendants, including Defendant Pack, to wait until it was known Mr. Ali was with his cousin in order to use the arrest of his cousin as a knowingly, false source of probable cause to arrest Mr. Ali himself.    Mr. Ali contends that he has appropriately alleged that the Defendants were motivated by specific class-based, discriminatory animus against him in retaliation for

20

challenging his termination and because of his intent to sue certain Defendants for racial discrimination, thus putting forth a plausible claim for a conspiracy to violate his constitutional rights.

Section 1985(3) provides:

> If two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]…[I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). This cause of action is directed at those who conspire to deprive protected classes of people of their rights. *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985). The federal remedy, construed broadly, is for "conspiracies involving invidious animus toward a class of persons" who are not adequately protected by the state. *Id.* at 1258 (internal quotation marks omitted). The elements of proof for a § 1985(3) cause of action are: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing *Buschi*, 775 F.2d at 1257).

At the outset, the Court finds that the Plaintiff has sufficiently alleged facts to state a claim for a conspiracy under Section 1985(3). First, the Plaintiff has stated sufficient allegations to meet the conspiracy elements. He claims that Defendants Pack, Redden, Epling, and Snuffer met

together to falsely create the probable cause necessary to arrest the Plaintiff and to coordinate testimony in order to deprive the Plaintiff of equal enjoyment of his lawful rights in a manner that resulted in his injury as a consequence of an overt act. The Plaintiff also satisfies the discriminatory animus element because he alleges that the Defendants committed these actions at the behest of Defendant Tanner, who was acting with discriminatory animus relating to the Plaintiff's race and Plaintiff's intent to sue Defendant Tanner and Raleigh County in a discrimination lawsuit.

Further, the Court finds that the intracorporate conspiracy doctrine does not apply here, and even if it did, the actions of Defendant Pack and his co-defendants as alleged in the complaint would satisfy one of the doctrine's exceptions. The intracorporate conspiracy doctrine "holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Roberts v. Ballard*, No. 2:15-CV-15458, 2017 WL 896983, at *5 (S.D.W. Va. Mar. 7, 2017) (Johnston, C.J.) (citing *Chavez v. McIntyre*, 424 F.Supp.2d 858, 861 (W.D. Va. 2006)). "The doctrine provides that an employer 'cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire amongst themselves.'" *Id.* (citing *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000)). Courts have applied this doctrine in the arena of civil rights cases, and "the Fourth Circuit has consistently applied it in other contexts, including actions brought under [Sections] 1983 and 1985." *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004).

"The Fourth Circuit has [also] recognized two exceptions to the general rule that agents of a principal cannot conspire with one another or the principal itself." *Roberts*, 2017 WL 896983,

at *6. The first exception holds that the immunity found in the doctrine is not available if an agent performs an unauthorized act in furtherance of a conspiracy. *Id.* (citing *Buschi*, 775 F.2d at 1252-53.) The second exception applies to defendants who have "an independent personal stake in achieving the corporation's illegal objective." *Id.* (quoting *Greenville Pub. Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). This second exception is satisfied where "the agent [has] a personal interest in the illegal activity wholly separable and independent of his relationship with the corporation," and "stand[s] to benefit personally from the conspiracy's unlawful objective." *Roberts*, 2017 WL 896983, at *6.

Here, Defendant Pack was an officer with the West Virginia State Police assigned to work with other officers as part of the Drug and Violent Crime Unit. The other individual defendants named as part of the conspiracy include a member of the Raleigh County Sheriff's Department and the Beckley Police Department, all members of the same unit but employed by different agencies. The Plaintiff therefore does not allege that one agency's employees conspired together to interfere with his rights, but rather members of several different agencies working as one unit. The Defendant's reliance on *Ziglar v. Abbasi* in support of his position that this doctrine should apply is specious at best. In *Ziglar*, the Supreme Court of the United States found that, while the law surrounding the doctrine is unsettled, agents in several different agencies, all of which fell under the purview of the Department of Justice, were entitled to immunity under the doctrine. *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1868 (2017). Here, however, the named Defendants were employed by several different state or local government agencies and were all assigned by those employers to work as a unit. That they worked as a unit did not undo their employment by

separate agencies and thus the alleged acts do not constitute a conspiracy by several employees of one corporate entity.

Moreover, even if the doctrine did apply here, Defendant Pack's alleged actions were unauthorized. According to the Plaintiff's allegations, Defendant Pack knowingly met with other law enforcement officers to put together a scheme creating probable cause, the Defendants knew was false, in order to inappropriately arrest the Plaintiff and charge him with crimes, and further that the Defendants worked in concert to plant evidence in his car. Accepting these allegations as true, Defendant Pack's conduct was not authorized. Thus, even if the Drug and Violent Crime Unit could be considered one legal entity for the purposes of the intracorporate conspiracy doctrine, the Defendant's actions were not authorized and would fall into an exception of that doctrine.

In sum, because the Plaintiff has sufficiently alleged facts to state a claim for a conspiracy under Section 1985(3), and because the intracorporate conspiracy doctrine does not apply to immunize Defendant Pack, the Defendant's motion to dismiss the claim in Count V of the amended complaint should be denied.

G.    *False Arrest and Improper Investigation Pursuant to 42 U.S.C. § 1983*

Defendant Pack also seeks dismissal of Count VII of the Plaintiff's complaint, arguing that this claim is barred pursuant to a one-year statute of limitations. Here, the Plaintiff was arrested on June 23, 2015, but did not bring this claim for false arrest until more than a year later. Thus, according to Defendant Pack, his claim is time barred and must be dismissed. The Plaintiff counters that, because he brings this claim pursuant to 42 U.S.C. § 1983, a two-year statute of limitations applies and his claim in Count VII is not time barred.

Section 1983 itself has no federally-provided statute of limitations. However, the United States Supreme Court has "expressly rejected the practice of drawing narrow analogies between § 1983 claims and state causes of action." *Owens v. Okure*, 488 U.S. 235, 248 (1989) (citing *Wilson v. Garcia*, 471 U.S. 261, 272 (1985)). Instead, the Supreme Court held, "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Id.* at 249-50. In short, the statute of limitations in § 1983 cases "is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). As both this Court and the West Virginia Supreme Court have recognized, West Virginia's two-year general personal injury statute of limitations is applicable to § 1983 actions. *See* W. Va. Code § 55-2-12(b); *Rodgers v. Corp. of Harpers Ferry*, 371 S.E.2d 358, 362 (W.Va. 1988), *abrogated on other grounds by Courtney v. Courtney*, 437 S.E.2d 436 (W.Va. 1993); *Ali v. Raleigh Cty.*, No. 5:17-CV-03386, 2018 WL 1582722, at *9 (S.D.W. Va. Mar. 29, 2018); *Morales v. Robinson*, No. CIV A 205-0509, 2007 WL 1074836, at *4 (S.D.W. Va. Apr. 6, 2007) (Copenhaver, J.); *Bell ex rel. Bell v. Bd. of Educ. of Cty. of Fayette*, 290 F. Supp. 2d 701, 709–10 (S.D.W. Va. 2003) (Haden, J.). The Plaintiff filed suit on June 23, 2017, within two years of the incident, and the Court therefore finds that Defendant Pack's motion to dismiss Count VII of the amended complaint should be denied.

### H. Abuse of Process

Defendant Pack moves for dismissal of the Plaintiff's claim for abuse of process in Count VIII of the amended complaint. Defendant Pack argues that this claim is also barred by the one-year statute of limitations for state law claims for abuse of process. The Plaintiff was arrested on June 23, 2015, and the criminal complaint was filed against him the same day. These are the

processes which the Plaintiff claims were abused by the Defendants, and he was required to file his complaint within a year of these actions. Because he did not bring suit until June 2017, Defendant Pack asserts the claim should be dismissed. The Plaintiff counters that the statute of limitations did not begin to accrue until his acquittal on the criminal charges, which did not occur until May 26, 2017. Thus, he contends he had a year from that date, not from June 23, 2015.

The Plaintiff's claim for abuse of process is not barred by the statute of limitations. As the Defendant correctly points out, the statute of limitations on an abuse of process claim in West Virginia is one year, and that action must be brought within one year from the termination of the acts which constitute the abuse complained of. *Preiser*, 352 S.E.2d at 29. Here, however, the Plaintiff alleges that the Defendants not only committed an abuse of process when they wrongfully arrested the Plaintiff, but continued to do so as they conspired to coordinate their testimonies and failed to disclose exculpatory evidence to the Plaintiff. Thus, the alleged abuse of process continued well past the Plaintiff's arrest and was not terminated until the Plaintiff's acquittal in May 2017. Given these allegations, the Plaintiff's abuse of process claim is not barred by the statute of limitations, and the motion to dismiss Count VIII should be denied.

## I. *Malicious Prosecution*

Defendant Pack also seeks dismissal of the Plaintiff's claim for malicious prosecution alleged in Count IX. He argues that the Plaintiff has put forth no allegations indicating Defendant Pack's personal involvement in the prosecution in any manner, and further argues that the Plaintiff clearly states that his complaint is against Raleigh County, thus failing to state a valid claim. The Plaintiff counters that Defendant Pack attempts to impose a higher standard than is necessary in

pleading his malicious prosecution claim, and that he has satisfactorily alleged facts that should allow his claim to survive a motion to dismiss.

According to the West Virginia Supreme Court,

> [i]n an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he can not recover.

Syl. Pt. 3, *Hines v. Hills Dep't Stores, Inc.*, 454 S.E.2d 385, 387 (W.Va. 1994). In a separate line of cases, the West Virginia Supreme Court held that the requisite elements for a malicious prosecution were only three and included "(1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff." Syl. Pt. 1, *Preiser*, 352 S.E.2d at 22. However, in examining these two statements regarding the elements of malicious prosecution, the court held that they were the same, and that "procurement [of the prosecution by the defendant] is an inherent element in both." *Norfolk S. Ry. Co. v. Higginbotham*, 721 S.E.2d 541, 546 (W.Va. 2011). Further, "the meaning of procurement is not that the defendants jointly applied to the justice of the peace to issue the warrant against the plaintiff, but that they *consulted* and *advised together*, and both participated in the prosecution, which was carried on under their countenance and approval." *Id.* (emphasis added).

The Plaintiff has sufficiently pled facts to satisfy the elements of a malicious prosecution claim. He alleges that Defendant Pack conspired with Defendant Snuffer and the other Defendant officers to improperly arrest him and to coordinate statements and testimony to secure a conviction against him. Specifically, with respect to the procurement, the Plaintiff has alleged that Defendant Snuffer consulted with and conspired together with the other Defendants, including

27

Defendant Pack, to ensure their testimony was consistent during the Plaintiff's prosecution. The Plaintiff further alleges that this was done with malice in response to Mr. Ali's intention to file suit against the Raleigh County Defendants for racial animus and discrimination, and that the prosecution by the Defendants terminated in Mr. Ali's favor when the jury found him not guilty of the crimes charged by the Defendants. Viewing these allegations in the light most favorable to the Plaintiff, the Court finds that Mr. Ali has sufficiently pled a claim of malicious prosecution in Count IX.

### J. Outrage

Finally, Defendant Pack seeks to dismiss the Plaintiff's claim for outrage brought in Count XI. He argues that the Plaintiff has failed to provide sufficient evidentiary support of any atrocious or intolerable actions by Defendant Pack to adequately claim outrage against him. The Plaintiff counters that he has sufficiently alleged outrageous acts on the part of Defendant Pack such that his outrage claim should survive a motion to dismiss.

In West Virginia, the tort of outrage, or intentional infliction of emotional distress, follows the Restatement of Torts (Second): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982). The West Virginia Supreme Court has established the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress;

28

and, (4) that the emotional distress suffered by the plaintiff was so
severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998) (reaffirmed in *Hatfield v. Health Mgmt. Associates of W. Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008). The court further explained that "whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." Syl. pt. 4, *id.*

Courts have struggled to determine whether conduct may reasonably be considered outrageous. *Courtney v. Courtney*, 413 S.E.2d 418, 422 (W. Va. 1991) (reviewing several cases considering the question). Plaintiffs must make a showing that "the defendant's actions toward the plaintiff were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency" and be viewed as intolerable in a civilized society. *Travis*, 504 S.E.2d at 425. "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct. On the other hand, outrageous conduct can include physical violence that causes bodily harm and emotional distress." *Courtney*, 413 S.E.2d at 423–424 (internal citations removed).

The Plaintiff has alleged that Defendant Pack and the other named Defendants conspired together to knowingly use false probable cause to arrest him without a warrant. He alleges that the Defendants did so to inflict emotional distress and scare him in retaliation for his intention to file a discrimination lawsuit against Defendant Tanner and the Raleigh County Sheriff's Department. The Plaintiff further alleges that the Defendants, including Defendant Pack, falsely accused him of illegal drug activity, planted evidence in his car, hid evidence from him, and forced him to face trial twice, at the risk of serving years in prison for crimes the Defendants knew Mr. Ali did not commit. Accepting these allegations as true, the Court finds that the alleged conduct

could reasonably be considered outrageous. The Plaintiff has therefore stated a claim for outrage sufficiently plausible on its face, to defeat dismissal of Count XI.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants West Virginia State Police and Corporal Kenneth L. Pack's Motion to Dismiss* (Document 38) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **ORDERS** that all the claims against the West Virginia State Police and Defendant Pack in his official capacity as an officer of the West Virginia State Police be **DISMISSED**. The Court further **ORDERS** that the motion be **GRANTED** as to Counts III, VI, and X, and that those counts be **DISMISSED**. Otherwise, the Court **ORDERS** that the motion be **DENIED**.

Lastly, the Court **ORDERS** that the *Defendants'* *Motion to Stay Discovery Pending the Resolution of their Motion to Dismiss* (Document 41) be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        August 28, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA